No. 21,356.

LOUISE BROWN, *Appellee,* v. JAMES E. BROWN [JAMES E. COX], *Appellant.*

### SYLLABUS BY THE COURT.

1. CHANGE OF VENUE—*Disqualification of Judge—Related to Plaintiff's Attorney—"Parties in Interest."* Where the judge of the district court is related to an attorney in the cause whose fee is to be fixed and determined by the court, the attorney is one of the "parties" in interest within the meaning of section 57 of the code of civil procedure, which provides that when the judge is related to either of the parties, the place of trial shall be changed or another district judge called in to try the cause.

2. SAME—*Divorce—Judge's Son Plaintiff's Attorney—Judge Disqualified.* In a suit for divorce, where the wife's attorney is the son of the judge

of the court and asks for an allowance of counsel fees, and the defendant applies for a change of venue on the ground of the relationship between the judge and the plaintiff's attorney, it is error to refuse to grant the application.

Appeal from Barton district court; DANIEL A. BANTA, judge. Opinion filed May 11, 1918. Reversed.

*Carr W. Taylor*, of Hutchinson, and *Charles L. Carroll*, of Great Bend, for the appellant.

*A. C. Banta*, of Great Bend, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This was a suit for divorce and alimony. The plaintiff recovered, and the defendant appeals.

The plaintiff, who is a negro woman, alleges that the defendant, a white man, is her husband by a marriage which she claims took place in Louisiana about 1904. The defendant's true name is James E. Cox. On May 10, 1890, he was married in Indiana to Nellie A. Logan; they afterwards moved to Illinois and five children were born of that marriage. In March, 1902, the defendant abandoned his wife and family, assumed the name of James E. Brown, and lived at various places in the south until he came to Kansas. He denies that he and plaintiff were ever married, and alleges that in Louisiana it was unlawful for whites and blacks to marry. The plaintiff and the defendant lived together in Louisiana as husband and wife, and the defendant subsequently came to Great Bend, where he engaged in his trade of blacksmithing. Shortly thereafter the plaintiff followed him, and they lived there together until a short time before this suit was begun. In February, 1917, plaintiff wrote and mailed the following letter to the former wife of defendant:

*Mrs. Anne Cox,*          GREAT BEND, KAN., Feb. 5, 1917.
    DEAR MADAM:
    I write to let you know that I am a negro and that your former husband, J. E. Cox and I have been living together for 13 years. I am his common law wife. I think it justice to you that you should know this. He has lived wit me under an assume name, J. E. Brown, and have denied you and your children and I just recently knew he was a married. man, and after we were separated about three weeks ago was when I first

Brown v. Brown.

learned of you, and science he has been in this country he has been pass-
ing as a negro. Included you will find postage. Please answer on return
mail.                                  MRS. J. E. BROWN or LULA BROWN,
                                                    1102 Kansas Ave."

Nellie A. Cox, the first wife of the defendant, secured a di-
vorce from him in Indiana on January 29, 1912, but the fact
was not known to either the plaintiff or defendant until after
this suit was begun.

On the same day the petition was filed, and before service
was had upon the defendant, the court made an *ex parte* order
requiring the defendant within five days to pay to the clerk of
the court $50 for the use and benefit of plaintiff's attorney,
and to deposit $25 security for costs, and to pay to the clerk
for the support and maintenance of plaintiff and her daughter
the sum of $25; and to pay each thirty days thereafter a sum
of $25 until the further order of the court. The case after-
wards proceeded to trial on the merits, and the court refused
to find that any marriage ceremony ever took place between
the parties, holding that if there was one, it was illegal and
void under the laws of Louisiana, but that the plaintiff was the
common-law wife of the defendant. The court granted her
a divorce on the ground of extreme cruelty, setting apart to her
two of the four lots owned by the defendant, including the lots
upon which the residence is situated, and giving the defendant
two vacant lots which defendant claims are worth about $150.
In the decree the court allowed to plaintiff's counsel $150 at-
torney fees.

There are a number of claims of error, but the only one
which we find necessary to consider is the contention that it
was error to refuse to grant a change of venue. The suit was
commenced January 11, 1917; four days later defendant filed a
motion to vacate the order for the payment of attorney's fees,
suit money, and money for the support and maintenance of
plaintiff and her daughter, setting up as one of the grounds
that he was never at any time married to the plaintiff, that she
is not his wife, and that he is not the father of her child. While
this motion was pending the defendant filed an application for
a change of venue on the ground of the relationship existing
between the judge of the district court and plaintiff's attorney,
who is a son of the judge. Motions were also filed asking the

court to reserve the questions of alimony, suit money, and attorney's fees until the case could be finally heard before a qualified judge. The motions were overruled, and the defendant filed his verified answer to the petition, setting up the defense already referred to. A second motion for a change of venue was filed on March 13, alleging as one of the grounds that the attorney for the plaintiff was the son of the judge of the district court, and that by reason of their relationship the judge was disqualified under the statute to try the case.

Section 57 of the code of civil procedure reads, in part, as follows:

"In all cases in any of the district courts of this state in which it shall be made to appear that a fair and impartial trial cannot be had in the county where the suit is pending, or when the judge is interested or has been of counsel in the case or subject-matter thereof, or is related to either of the parties, or otherwise disqualified to sit, the court may, upon application of either party, change the place of trial to some county where the objection does not exist."

Provision is made in the same section for calling in some other district judge to attend and sit as judge of the court where the case is pending.

It is defendant's contention that the son of the district judge is a "party," within the meaning of the statute. There are two lines of authorities respecting the construction which should be given to the term "parties" as used in constitutional or statutory provisions intended to disqualify a judge from sitting in a cause in which he is related to one of the litigants. In some jurisdictions the word is given a narrow and technical meaning, and the judge will not be held disqualified unless the person to whom he is related is in strictness one of the parties to the cause. In other jurisdictions the rule adopted is, that if the judge is related to an attorney in the cause whose fee is contingent upon success, or the amount of the fee is to be fixed and determined by the court, he is a party within the meaning of the provision requiring a change of venue where the judge is related to one of the parties. In our opinion the spirit and purpose of the statutory provision is best subserved by the latter construction. In 15 R. C. L. 534 it is said:

The great weight of authority is that a judge whose relation within the specified degree is attorney in an action with fees contingent on recovery is disqualified to sit therein under a constitutional provision that

no judge shall preside in the trial of a case where either of the parties shall be connected with him by consanguinity within a certain degree, although the authorities are not all agreed on this point."

In 23 Cyc. 585 it is said:

"But where the attorney's compensation depends on the contingency of recovery, he is, in some jurisdictions, regarded as an interested party, so that relationship to him will disqualify, although the client may have agreed to pay fees commensurate with the services rendered, independently of success."

A leading case is *Roberts v. Roberts*, 115 Ga. 259. There the judge was related to the counsel of an applicant for alimony and counsel fees in a divorce proceeding, and it was held that he was disqualified from presiding in the case and passing upon the application, although such counsel may have had a contract with the applicant binding her to pay them for their services, independently of the success of the application for alimony and counsel fees. In the opinion it was said:

"It is the pecuniary interest of the attorney in the result of the case which disqualifies the judge. If the applicant did not ask any allowance of counsel fees, of course the fact that her counsel was related to the judge, no matter how closely, would not have the effect to disqualify the judge from presiding. The moment the applicant asks for counsel fees her counsel becomes pecuniarily interested in the result of the suit, and, so far as these fees are concerned, the counsel are as much parties to the case as if they were parties to the record. . . . In an application for alimony and counsel fees the counsel for the applicant are thus not only pecuniarily interested in the result of the suit, but if counsel fees are allowed a judgment is obtained which is absolutely under their control, independently of anything which might be done by their client in reference to the main case, and which can be enforced for their benefit, certainly in the name of their client, even if the cases above referred to are not authority for the proposition that it can be enforced in their own names. In such a case we do not think that a judge who is related within the fourth degree of consanguinity or affinity to any counsel for the applicant should preside. The reason and spirit of the code section above referred to, as well as a proper construction of the word "party" therein contained, would disqualify a judge so situated from presiding in the case. In such a case the judge determines not only the question as to whether under the circumstances of the case counsel fees should be allowed, but he also determines the amount, the allowance of fees and the amount thereof being left under our law to his discretion." (pp. 263, 264.)

The question is also the subject of a note in 15 A. & E. Ann. Cas. 533, where it is stated that the courts adopting the con-

trary view are those inclined to construe the term "parties" in its limited or strict sense.

A recent case involving the very question now under consideration is *Railroad Co. v. Kirk*, 102 Miss. 41, reported with notes in Ann. Cas. 1914 C, 968, 970. In a well-considered opinion reviewing the leading cases, the supreme court of Mississippi adopted the broad and liberal rule of construction and held a judge disqualified to sit in a divorce and alimony case because he was related to an attorney for one of the parties, expressly declaring in the opinion that if the numerical weight of authority rested with the narrow view, or if there were no precedent to follow, the court would unhesitatingly adopt the broad and liberal construction of the statute, because of the general policy of the law. In the opinion it was said:

"We are convinced that the broad and liberal rule of construction is the soundest and wisest rule, and, adopting this rule as our guide, we conclude that the circuit judge was disqualified to preside at the trial of this case. If the numerical weight of authority rested with the narrow view, we would unhesitatingly follow the lead of those courts adopting the broad and liberal construction of statutes and constitutions similar in language to our own constitution. In the absence of precedent, we would feel constrained to create a precedent in harmony with our views. Every litigant is entitled to nothing less than the cold neutrality of an impartial judge, who must possess the disinterestedness of a total stranger to the interests of the parties involved in the litigation, whether that interest is revealed by an inspection of the record or developed by evidence *aliunde* the record. The real parties in interest furnish the reason for the judge to recuse himself when it becomes known that they are related to the judge, although they may not be parties *eo nomine*." (p. 54.)

An examination of the cases cited on both sides of this question convinces us that the weight of authority, giving due consideration to the more recent expressions of the courts and law writers, favors the adoption of a broad and liberal rather than a narrow construction of the term "parties" as it is used in statutory or constitutional provisions similar to the provision in our code. In some of the cases which adopt the other view, the fact that at the common law relationship of the judge to one of the litigants did not disqualify him from sitting in the cause is given more consideration and force than it is entitled to in our opinion. In *Roberts v. Roberts*, supra, the supreme court of Georgia laid stress upon the statutory dis-

qualification of a juror who is related to one of the parties or has an interest in the result of the suit, and the court in the opinion said:

"The reasons at the foundation of the rule which forbid a juror from sitting in a case where he is related to some one pecuniarily interested in the result of the suit would also apply in the case of a judge who was in a similar situation. If one not a party to the record, but directly and pecuniarily interested in the result of the cause, would be such a party thereto as to disqualify one of his kinsmen from being a juror, he would also be such a party as to disqualify his kinsman from presiding as judge. Especially would the judge be disqualified in a proceeding where he presides, not only with the powers of a judge to determine the questions of law arising in the case, but with the powers of a jury to absolutely settle all disputed questions of fact, as is the case in an application for the allowance of temporary alimony and counsel fees, when one or more counsel for the applicant in whose behalf the fees are asked are related to the judge within the degree referred to in the statute declaring when a judge should be disqualified." (p. 263.)

Among the grounds under our code for the peremptory challenge of a juror are, "that he . . . has an interest in the action . . . or is of kin to either party." (Civ. Code, § 282.)

Our conclusion is that under the facts in this case the judge of the district court was disqualified, and it was error to refuse to change the venue.

The judgment is reversed and the cause remanded for further proceedings.