No. 40,910

Cole Leverenz, *Appellee*, v. Doreen Leverenz, *Appellant*.

(325 P. 2d 354)

Opinion filed May 10, 1958.

*Jay W. Scovel,* of Independence, argued the cause, and *Thomas R. Scovel,* of Independence, was with him on the briefs for the appellant.

*George W. Donaldson,* of Chanute, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

Jackson, J.: This was a suit by a husband against his wife for divorce. The parties were first married in New York City on March 8, 1946, while the husband was in the United States Army. Shortly thereafter, he apparently was discharged from the service and came home to Chanute to get employment, and later returned east. The parties had a second wedding ceremony on May 8, 1946, some two months after the first, in the university chapel of Rutgers University. This last ceremony is often referred to in the abstracts and briefs as the religious ceremony. They apparently spent some two weeks on a trip in the south and returned to Chanute, the husband's home town, to make their permanent residence. The husband's father had arranged for an apartment for the couple while his son was in New Jersey.

Marital troubles began early. The husband testified that during the time between the two ceremonies, he received a telegram from his wife saying that she had changed her mind and did not want to have another wedding. The husband had not been married before

and the wife had been married and divorced. At any rate, trouble began in earnest when the parties took up residence in Chanute. There is evidence that the wife and the husband's mother disagreed rather violently. The troubles continued and in 1947, the parties signed a separation agreement, but apparently did not separate. The husband was called back into the army during the Korean war for some two years, and the wife went with him for some sixteen or seventeen months and then returned home to Chanute.

By the year 1956, the couple were the parents of three boys. In July of that year, the husband took the family in their car to the home of the wife's parents in New Jersey, and returned by train to Chanute. In September, the wife brought the boys back to Chanute, and returned to New Jersey to aid in the care of her father who had suffered a heart attack. The boys were nine and one-half, seven and one-half, and four and one-half years of age at the time of the trial in 1957. The wife returned to Chanute in the family car in November, 1956, and the marital troubles continued. The next night after her return, the wife asked her husband for a divorce and custody of the children. He refused to allow her to have the children, and apparently the squabbling continued. On the evening of January 20, 1957, another altercation occurred between the couple. It is admitted the wife struck the husband with a light paddle, and he retreated to the back yard. She called the police and attempted to have them "take him down and lock him up and get him away for the evening."

The next day, the husband filed his suit for divorce on the grounds of extreme cruelty and gross neglect of duty, and obtained a temporary restraining order, the principal part of which reads as follows:

"IT IS THEREFORE ORDERED BY THE COURT: That plaintiff be, and he is hereby, granted the temporary care, custody, and control of the minor children of plaintiff and defendant, to-wit: Laird Leverenz, Jeffrey Leverenz, and Neil Leverenz, during the pendency of this action or until further order of the Court herein; and that plaintiff be, and he is hereby, granted temporary possession of the family home during the pendency of this action, or until further order of the Court herein.

"IT IS FURTHER ORDERED BY THE COURT: That defendant be, and she is hereby, restrained and enjoined from in any wise interfering with plaintiff's custody of said minor children, or any of them; and that she be, and she is hereby, specifically restrained and enjoined from removing said minor children, or any of them, from the State of Kansas or from the jurisdiction of this Court."

Perhaps it should be noted that the wife in the above order was not deprived of her children, and in fact continued to live in the family home with them. The husband lived there, too, with the parties occupying separate rooms as they had done since November, 1956, when she returned from New Jersey. On April 1, after a hearing, the restraining order was modified as follows:

"WHEREUPON, the Court, having read and considered the files in said cause, having heard and considered the evidence presented by the parties, and being fully advised in the premises, finds:

"That the orders heretofore made herein on the 21st day of January, 1957, shall remain in full force and effect, except as follows:

"The defendant may remain in the home if she cares to do so and the plaintiff shall pay to the Clerk of this Court the sum of $25.00 in addition to the support heretofore furnished by the plaintiff for the defendant and minor children, the first payment to be made as of this date and a like payment of $25.00 on the first day of each month during the pendency of this action; in the event the defendant desires not to remain in the home, then and in that event the plaintiff shall pay to the Clerk of this Court the sum of $50.00 per month for the support of the defendant during the pendency of this action, the first payment to be made as of this date and a like payment on the first day of each month during the pendency of this action.

"Any Long Distance telephone calls made by the defendant, excepting emergency calls, shall be paid by the defendant.

"In the event defendant remains in the home, she shall have and is hereby given the privilege of using the Dodge station wagon for transportation for herself and children except at such times as the plaintiff needs said station wagon for necessary out-of-town business trips.

"In the event defendant leaves the home, she is hereby given and shall have the privilege of visiting and being with said minor children at reasonable and opportune times."

It may be noted that the parties had a second car, not as good as the one spoken of in the above order, which the wife could use at any time; that all of the household bills were paid by the husband, with the exception of long distance telephone calls. The husband had objected to calls to New Jersey of quite alleged large amounts. The court also allowed the wife's attorney the sum of $150 to apply on his fee.

The trial of the case began on June 24, 1957; defendant's counsel was granted time to make an offer of proof; and the court took the case under advisement. The final judgment of the court as of July 2, 1957, but as modified after post trial motions, provided the following:

"WHEREUPON, the Court, from the evidence and arguments of counsel, and being fully advised in the premises, finds:

"That plaintiff should be granted a divorce from defendant and that plaintiff is a fit and proper person to have the care, custody, and control of the three minor children of the parties, subject to the right of defendant of visitation and to have said children with her at all reasonable times and places, but that said children should remain within the jurisdiction of this Court and that neither party shall remove them from the jurisdiction of the Court without the Court's permission.

.    .    .    .    .    .    .    .    .    .    .    .

"That defendant be, and she is hereby, awarded judgment in the sum, of $6,000.00 to be paid by plaintiff to the Clerk of this Court on or before January 1, 1958."

In the above summary, no attempt has been made to include details of evidence, charge and countercharge, and other matters in this sorry tale. Those minutiae extending over a period of more than ten years, were heard by the trial court, have been fully considered by this court, but would serve no purpose in the reports of this court, either for the profession or for posterity. It might be said that the court found no facts of immorality upon the part of either party, nor was any real evidence of such conduct introduced. It is true, the wife testified as to certain rather vague suspicions about her husband, which the trial court could have and evidently did regard as unfounded.

In her brief on appeal in this court, appellant wife has set out thirteen numbered paragraphs of alleged errors committed by the trial court. While we have considered all of this material, it will be more convenient to deal with the questions under more general headings.

The first question raised by appellant concerns the attempt made to disqualify the trial judge on the ground of bias and prejudice. At the time of the hearing as to the application to modify the restraining order held on April 1, 1957, counsel for the wife had an oral conversation with the trial judge suggesting that he should disqualify himself. On April 10, counsel filed a written application for an order of disqualification.

The application is quite long, but a fair summary would seem to be: That the Honorable B. M. Dunham, Judge of the District Court, and Mr. A. F. Leverenz, father of the plaintiff, are and have been for many years close friends, and have been and are both members of the board of directors of the First National Bank of Chanute.

That certain friends of the defendant, and also the plaintiff in the case, have told defendant that the judge was biased against the defendant, and that she would not receive a fair trial.

That defendant believes the judge has acted as counsel and advisor on behalf of plaintiff's father, and had perhaps made a will for the father giving certain property to plaintiff; that, in effect, the actions of the judge in this case to date in issuing the preliminary restraining order against defendant, and in modifying that order on April 1, 1957, and in allowing it to remain in force as a temporary injunction had shown prejudice against the defendant. There were also some allegations about the former suit for divorce filed in November, 1956, which was withdrawn before service of summons on defendant. The application was signed by defendant's attorneys.

In answer to the above application, plaintiff husband filed his affidavit denying that he had ever made the statements attributed to him in the application to the defendant or to anybody else relating to the bias of the district judge; that the judge was not then, and never had been plaintiff's attorney; that plaintiff had not consulted any attorney, except his present attorney of record, in relation to the present suit; that he had consulted his present attorney in regard thereto as early as November, 1956. Affiant alleged that in November, 1956, he feared defendant intended to remove the children from the state, and therefore, a restraining order in the November suit had been prepared, but neither it nor any summons in such suit had been served upon defendant, and had never been in the possession of the affiant.

The attorney of record for the plaintiff husband also filed an affidavit in relation to the application to disqualify the trial judge. This affidavit recounted the matters in regard to the suit in November, 1956, which had been filed but withdrawn. Reference was also made to the oral conversation at the hearing to modify the restraining order in the present suit on April 1, 1957, and affiant states that the trial judge then suggested that if a written application for disqualification was contemplated, it should be filed before he ruled upon applications then under consideration.

On April 16, 1957, the trial judge made the following statement disposing of the application to disqualify himself:

"The Court has given this matter serious consideration. I want to state for the record that I do not now and have never represented Mr. A. F. Leverenz, the father of this plaintiff, in legal matters. Of course, I realize the father is not a part of this litigation. I hope it is true that I am a friend of his and that I am a friend of a good many people in Neosho County.

"I have carefully searched the law with reference to disqualification of Judges since this suggestion was made by attorneys for the defendant. I still

feel that a Judge has some bounden obligations to do when he takes the office of Judge, unpleasant though some may be.

"Sec. 20-304 of G..S. of Kansas, 1949, provides the grounds for disqualification. Sec. 60-511 provides for appointing Judge Pro Tem. The Court has read the case of Hupp Estate, in 177th Kansas 202. Also, *in re* Hupp Estate, in 178th Kansas, p. 672. The nature of that case and the things therein transacted, were far different than in the instant case. I know the parties to this litigation and I want the record to show as I said before, that I do not represent the father in any legal matters, have not represented him. I hope I am a friend of his, and am in hopes I am a friend of all party litigants.

"As far as the defendant assuming in her affidavit that I had discussions with reference to some conveyance or will which had been prepared for the father of the plaintiff, that is untrue, and if the statement was made, it is pure fabrication. The Court did issue the order under date of January 21, 1957. The application was made and hearing had thereon, in which testimony was introduced and the order made.

"The staying in the home of the plaintiff by the defendant was no part of the Court's order. She stayed there as a matter of choice and it was satisfactory to the Court.

"On the defendant's application for modification, the order was modified as per order of the Court which speaks for itself.

"This Court does not feel that it is the law, nor was it the intention of the Supreme Court in its opinion *in re* the Hupp Estate, for a party litigant to disqualify a Judge by the mere filing of an unsupported affidavit such as was filed in the instant case.

"If this Court had the slightest doubt that he could not sit as a fair and impartial Judge in the trial of this case, he would instantly and without hesitation disqualify himself.

"It is the order and judgment of the Court, that the application for an order disqualifying the Judge, be and the same is, hereby overruled."

A certificate of disqualification of the district judge was filed in this court under G. S. 1949, 20-311a on May 22, 1957. This court denied that application by order dated May 24, 1957.

It will be noted that none of the specific grounds set out in the statutes for the disqualification of judges was even alleged in the application filed in the district court (see G. S. 1949, 20-305 and 20-311). Bias and other disqualifications of judges of the district courts and of this court have been discussed by this court in the following cases: *Tootle v. Berkley,* 60 Kan. 446, 56 Pac. 755; *Sheldon v. Board of Education,* 134 Kan. 135, 4 P. 2d 430; *In re Hedrick Appeals,* 155 Kan. 165, 123 P. 2d 806; *State, ex rel., v. Sage Stores Co.,* 157 Kan. 622, 143 P. 2d 652. We also note the wife's reliance upon *In re Estate of Hupp,* 178 Kan. 672, 291 P. 2d 428. None of these authorities governs this case, nor do they show that the trial judge in this case could be disqualified upon the above record. Of

course, everyone is entitled to a fair trial before an unbiased and impartial judge, but judges have had to try cases in which they were acquainted with one or both parties, the families of the parties, and with counsel of the parties since time immemorial. Part of the judicial process upon the part of the judiciary is to be certain that despite any friendship, justice keeps an even hand. Of course, the judge should himself, where possible, earnestly avoid any situation which would raise a doubt.

Upon the record in this case, and having considered all the facts including all orders made by the trial judge, this court cannot hold that the trial judge should be disqualified.

In the court below, appellant wife sought to introduce evidence to the effect that her husband was the only son of parents of some substantial means. Apparently, the theory behind the offer of such evidence was that these matters should be taken into consideration in awarding alimony or in making division of the property of the parties. The trial court did not err in excluding such matters. The father of the husband was not a party to this suit. The son might or might not survive his father; he might or might not, in the future, be the sole heir, devisee or legatee of his parents. Such matters are not relevant to the questions in the case. It might be added, although likewise immaterial, that from the record and perhaps the oral argument, it may be gathered that the wife's parents are likewise people of some means. There is nothing definite concerning this, nor need there be.

As to all of the other questions raised by the wife on this appeal, this court is in effect asked to test the credibility of the witnesses, weigh the evidence, and assume the position of the trier of the facts. This court cannot and will not do this. The wife argues that it is usual to give the custody of minor children to the mother instead of to the father, but there cannot be any absolute rule to that effect. There is evidence in the record which would substantiate the order giving the custody of these young boys to their father, and the trial judge heard the evidence and saw the parties. This court did not.

The usual rule as to contested facts, announced above, applies in all its force to the trial of suits for divorce. As early as *Gibbs v. Gibbs*, 18 Kan. 419, the court, in the first paragraph of the syllabus, said:

"Where an action has been tried by a court without the intervention of a jury, and the court makes special findings, the findings of the court are as

conclusive in the supreme court as the verdict of a jury; and where each finding of fact is sustained by some evidence, this court will not order the findings set aside, nor grant a new trial, although the evidence offered is of the most unsatisfactory character, and although thereon this court, if sitting as a *nisi prius* court, might reach different conclusions of fact."

The rule of the Gibbs case as to the review of facts in suits for divorce and for the custody of children has been adhered to as recently as *Goetz v. Goetz*, 180 Kan. 569, 306 P. 2d 167; see same case on second appeal, 181 Kan. 128, 309 P. 2d 655. See further, *Roberts v. Roberts*, 103 Kan. 65, 173 Pac. 537; *Putnam v. Putnam*, 104 Kan. 47, 177 Pac. 838; *Currie v. Currie*, 114 Kan. 37, 216 Pac. 1083; *Busley v. Busley*, 115 Kan. 725, 224 Pac. 922; and *Travis v. Travis*, 163 Kan. 54, 180 P. 2d 310.

The rules announced in the above cases prevent the reversal of the orders of the trial court as to all other matters raised by the parties, including the contention of the husband on his cross-appeal that the order as to the division of property should be set aside, which contention the court finds to be without merit.

Lawyers, ministers of the gospel, and psychiatrists may endeavor to reduce the alarming divorce rate in this nation, and some of them have apparently tried to be of help in this case, but unless the parties to a marriage endeavor to treat each other with compassion and understanding, the particular marriage will fail.

The final decree and orders of the district court are hereby affirmed.