(678 P.2d 181)

No. 55,320

STATE OF KANSAS, *Appellee,* v. CLAYTON LOGAN, *Appellant.*

Opinion filed March 22, 1984.

*Charles A. O'Hara,* of O'Hara, Busch, Johnson & Falk, of Wichita, for the appellant.

*Geary N. Gorup,* assistant district attorney, *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, for the appellee.

Before MEYER, P.J., ABBOTT and SWINEHART, JJ.

SWINEHART, J.: In May of 1981, a jury convicted defendant, Clayton Logan, of the sale of methamphetamine in violation of K.S.A. 65-4107(*d*)(3) and 65-4127b(*b*)(2). Defendant's direct appeal to this court was affirmed in an unpublished opinion (No. 53,502, filed July 9, 1982).

During the original trial and the appeal thereof, the defendant was represented by attorney Lyle Britt. Subsequent to the above proceedings and with the assistance of a different attorney, the defendant filed a pleading in this case denominated as a motion for new trial. The basis for this motion was twofold: (1) that defendant's original attorney was incompetent, and (2) that the trial judge was biased. Defendant alleged that in the name of justice and because of newly discovered evidence he should be granted a new trial.

Prior to a hearing on the motion, defendant had moved for the disqualification of the trial judge, Owen Ballinger. This motion for disqualification was denied by the assigned judge. James J. Noone. Following this ruling, evidence was presented and the motion for new trial was denied. It is from this denial that defendant now appeals.

Some of the facts relevant to this appeal concern the performance of defendant's attorney, Britt, during defendant's original trial. Attorney Britt, as a trial tactic, had defendant testify as to certain prior convictions. Defendant disclosed only his prior offenses involving dishonesty, namely, felony burglary and robbery. The jury was led to reasonably believe that defendant had been convicted of only those offenses, and that the last such offense occurred some nine years prior to the offense upon which defendant was now being tried. In fact, the last offense of

which defendant was convicted was the sale of drugs (LSD). On cross-examination, the State attempted to reveal to the jury that defendant's most recent conviction was for the sale of LSD. The defendant, at the direction of his attorney, pled the Fifth Amendment and refused to answer the State's questions. Ultimately, defendant was required to testify as to his conviction of a drug offense. However, the trial court correctly instructed the jury that it was to disregard this testimony in deciding the guilt or innocence of defendant on the present charges.

The other fact relevant to this appeal is that the trial judge, Owen Ballinger, is the father of an assistant prosecuting attorney in the office of the Sedgwick County district attorney. Even though it is not alleged that the judge's son participated in this prosecution at any stage of the proceedings, defendant argues that such a relationship is sufficient evidence of the court's bias and prejudice as to constitute denial of a fair trial.

We find that the factual bases of these motions are not susceptible of resolution by a motion for new trial filed after a direct appeal has been argued and decision rendered by the appellate court. See *State v. Myrick & Nelms,* 228 Kan. 406, 423, 616 P.2d 1066 (1980); *State v. Roberts,* 226 Kan. 740, 745, 602 P.2d 1355 (1979); *State v. Williamson,* 210 Kan. 501, 506, 502 P.2d 777 (1972). Further, in order to resolve defendant's contention, we shall consider this matter as having been filed and considered by the trial court under the provisions of K.S.A. 60-1507.

First, we consider the question of the alleged incompetency of trial counsel. The facts prove without question that Attorney Britt's trial tactic, as it related to the use of defendant's personal testimony of his prior criminal record, backfired. Attorney Britt has since testified as to his misunderstanding of the law and of the consequences of defendant's testimony. We have reviewed the record before this court, which includes the original trial transcript. The remainder of Attorney Britt's services appear to have been highly professional in every regard. Judged by the totality of the circumstances, we cannot find that Mr. Britt's single mistake was so devastating as to prejudice defendant by lack of competent counsel. See *State v. Voiles,* 226 Kan. 469, 470-71, 601 P.2d 1121 (1979); *Schoonover v. State,* 2 Kan. App. 2d 481, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978). Accordingly, there exists no basis for setting aside the sentence and

granting a new trial. See *State v. Wright,* 203 Kan. 54, 453 P.2d 1 (1969).

Finally, we consider the problem of the trial judge having a son who is on the staff of the district attorney's office. The Code of Judicial Conduct as set forth by Supreme Court Rule 601, 232 Kan. cci, and particularly Canon 2, provides as follows:

"A  *A judge should* respect and comply with the law and should *conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary.*

"B  *A judge should not allow his family, social or other relationships to influence his judicial conduct or judgment. He should not* lend the prestige of his office to advance the private interests of others; nor should he *convey or permit others to convey the impression that they are in a special position to influence him.* He should not testify voluntarily as a character witness.
COMMENTARY

".  .  .  .  A judge must avoid all impropriety and appearance of impropriety. He must expect to be the subject of constant public scrutiny. He must therefore accept restrictions on his conduct that might be viewed as burdensome by the ordinary citizen and should do so freely and willingly." (Emphasis supplied.)

## Canon 3 provides:

"C.  *Disqualification.*

"(1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:

.  .  .  .

"(d) he or his spouse or a person within the third degree of relationship to either of them, or the spouse of such a person:

.  .  .  .

"(ii) is acting as a lawyer in the proceeding." (232 Kan. cciii-cciv.)

The facts of this case show only that the trial judge's son was on the staff of the Sedgwick County district attorney's office as an assistant district attorney during the pendency of this action. The facts do not support any finding whatsoever that the defendant's right to a fair trial was impeded, infringed upon, or denied by the connection here disclosed. We find that defendant was not prejudiced in any way, and his sentence and conviction should not be set aside on this ground. However, to eliminate this question being raised in future proceedings, we would deem it appropriate for Judge Ballinger to recuse himself from cases pending before him which the district attorney's office is prosecuting while his son is employed on its staff.

Affirmed.

ABBOTT, J., concurring: I desire to elaborate on the majority opinion concerning defendant's allegation that he is entitled to a new trial because at all times material Judge Ballinger's son was a practicing lawyer employed by the district attorney for the Eighteenth Judicial District.

I agree that the Honorable James J. Noone, administrative judge for the Eighteenth Judicial District, did not err in refusing to disqualify Judge Ballinger from hearing the motion for a new trial, *because* that motion was premised on K.S.A. 20-311. The motion for disqualification and affidavit of prejudice were not sufficient. Judge Noone correctly noted that Judge Ballinger's son was not an attorney of record nor a "party" to this action. I am satisfied an attorney employed in a public official's office and not participating, either directly or indirectly, in a criminal proceeding is not an attorney of record. Kansas has adopted the line of authority that when the judge is related to an attorney in the case whose fee is contingent upon success, or the judge is to fix or approve the fee, the attorney becomes a "party" within the meaning of a statute requiring a change of venue. *Brown v. Brown,* 103 Kan. 53, 172 Pac. 1005 (1918). Thus, Judge Ballinger's son was neither an attorney of record nor a party to this action.

The sole question in this case is whether the trial judge should have disqualified himself under the Kansas Code of Judicial Conduct (Rule 601, Canon 3C[1] [232 Kan. cciii]), which requires a judge to disqualify himself or herself "in a proceeding in which his [or her] impartiality might reasonably be questioned."

At common law, the rule was that a judge was not disqualified by reason of being related to an attorney in a cause being tried before that judge. *Brown v. Brown,* 103 Kan. at 58. Kansas, as do many other states, regulates by statute the disqualification of a judge because of relationship, and basically requires disqualification within varying degrees of consanguinity or affinity (see K.S.A. 20-311 and its predecessors). As a result, considerable case law exists on whether an attorney's pecuniary interest in the outcome of an action makes the attorney a party so as to disqualify a judge for being related to a party. Some states hold that it does (as it appears Kansas does), while others have held that "party" includes only actual parties to litigation.

In 1972, the American Bar Association promulgated a code of judicial conduct that was adopted along with the supporting

rules and commentary as a rule of the Kansas Supreme Court (Rule 601 [214 Kan. xciv]) for the express purpose of defining the standard of conduct to be observed by all judges in Kansas. Thus, for the first time Kansas adopted a code of judicial conduct, which became effective January 1, 1974 (213 Kan. ix). To date, Canon 3C(1) has not been construed in Kansas.

We emphasize that our Kansas Supreme Court has exclusive jurisdiction to discipline judges for violation of the Kansas Code of Judicial Conduct. Both this court and the trial court, however, have jurisdiction to determine whether any alleged violations resulted in the denial of a fair trial to Clayton Logan.

Although the acts described in this paragraph are not binding in Kansas, we do note that the members of the United States Supreme Court have in recent years recused themselves under circumstances similar to that before us unless all parties to the case requested that a justice participate. *Ex Parte Quirin,* 317 U.S. 1, 87 L.Ed.3, 63 S.Ct. 1, 2 (1942). We also note that when Justice Hughes assumed a position on the United States Supreme Court, his son, Solicitor General Hughes, resigned so as to avoid a conflict. Conversely, Justice Clark retired in 1967 after his son took office as Attorney General of the United States. He did hear cases involving the office of the United States Attorney General while his son was employed there, prior to the time his son became Attorney General. Our Kansas Supreme Court justices have also consistently recused themselves when any one of their children has been associated with a law firm or a prosecutor's office that was involved in a case before the Court.

Disqualification of federal judges is regulated by 28 U.S.C. § 455 (a) (1976), part of which is similar to Canon 3C(1) in that it requires disqualification if the judge's impartiality might reasonably be questioned. 28 U.S.C. § 455 was amended in 1974 to reconcile the 1972 Model Code of Judicial Conduct with the federal statute. Thus, the requirement for disqualification when a judge's impartiality might reasonably be questioned became applicable to federal judges in 1974; most judges, however, followed the 1972 Code of Judicial Conduct prior to 1974. Congress also intended to abolish the then-existing concept regarding disqualification that judges had a "duty to sit." H.R. Rep. No. 1453, 93d Cong., 2d Sess. 5, *reprinted in* 1974 U.S. Code Cong. & Ad. News 6351, 6355. See, *e.g., United States v.*

*Hoffa*, 382 F.2d 856 (6th Cir. 1967), *cert. denied* 390 U.S. 924 (1968).

The Seventh Circuit considered § 455(a) in a case wherein the trial judge's brother was a partner in a law firm representing one of the parties but was not participating in the case. *SCA Services, Inc. v. Morgan*, 557 F.2d 110 (7th Cir. 1977). Obviously, other provisions of § 455 also applied and required disqualification. The Court, however, did consider whether the trial judge's impartiality might reasonably be questioned and concluded that "[i]n sum, the circumstances of this relationship and the importance to each litigant of the outcome of his case might well make it reasonable for a member of the public *or party or counsel* opposed to question impartiality under Section 455(a)." At p. 116 (emphasis supplied). The Court stated that the disqualification provision of § 455 is mandatory and requires a judge to disqualify oneself regardless of whether or not a motion to disqualify has been filed. The court then issued an order in mandamus requiring the trial judge to disqualify himself.

In *United States ex rel. Weinberger v. Equifax, Inc.*, 557 F.2d 456 (1977), *cert. denied* 434 U.S. 1035 (1978), the Fifth Circuit considered a case in which the trial judge's son was an associate in the law firm representing the defendant but did not actively participate in the case. In considering § 455(a), the court simply stated that the question on review was whether the trial judge abused his discretion in holding that a reasonable person would not reasonably question his impartiality.

The Ninth Circuit in *United States v. Conforte*, 624 F.2d 869, 879, *cert. denied* 449 U.S. 1012 (1980), agreed with the Second Circuit case of *In re International Business Machines Corp.*, 618 F.2d 923, 927 (1980), wherein a party who was aware of the grounds for disqualification when the case was heard in the trial court was denied the right to raise them on appeal as not being timely.

Our own Tenth Circuit, in *United States v. Gigax*, 605 F.2d 507 (1979), considered § 455(a) and held that the duty to disqualify oneself when a trial judge's impartiality might reasonably be questioned is self-enforcing. The duty to disqualify also may be asserted by a party by motion and may be enforced by interlocutory appeal or mandamus. The Tenth Circuit adopted the Fourth Circuit test of whether a reasonable person might

question the trial judge's impartiality under all the circumstances (*Rice v. McKenzie,* 581 F.2d 1114 [4th Cir. 1978]) and emphasized that the issue is *not* whether the judge is impartial in fact.

I recognize that the case before us deals with an alleged violation of a Supreme Court rule governing judicial conduct, not a mandate by a legislative body that a judge is disqualified when that judge's impartiality might reasonably be questioned. This makes a considerable difference in my view. We have some guidance from foreign jurisdictions as to what is required before reversible error can be found by an appellate court.

In *Dyas v. Lockhart,* 705 F.2d 993, *cert. denied* _____ U.S. _____ (1983), the Eighth Circuit considered whether a convicted murderer had been denied due process of law. The presiding judge at defendant's trial was the brother and father of the two deputy prosecuting attorneys who participated in the trial, and the uncle of the county prosecuting attorney. Prior to trial, the trial judge offered in writing to recuse himself because of the relationships. The record did not conclusively show that the defendant knew about and waived the offer, and the case was remanded for that purpose. The court stated that for the defendant to obtain a reversal on due process grounds because of bias, the defendant must demonstrate that the trial judge was actually biased or prejudiced against him. The court then stated that the judge's relationship to the prosecutors, standing alone, although in violation of Canon 3C(1)(d)(ii) of the Arkansas Code of Judicial Conduct, was insufficient to raise the conclusive presumption of his actual bias. The court concluded that a trial judge's disqualification under the judicial code does not necessarily imply impermissible bias under the due process clause. It is significant to me that in this case the circuit court based its decision on that section of the code specifically requiring the judge's disqualification because he was related to the prosecutors within the third degree of relationship (3C[1][d][ii]) instead of on his being disqualified because of the general appearance of partiality (3C[1]). The significance is that a specific requirement for disqualification should not give a defendant a lesser burden than the general requirement of 3C(1).

Interestingly, the Supreme Court of Arkansas had occasion to consider an appeal in a criminal case heard by the same judge

who presided in the preceding case. *Adams v. State*, 269 Ark. 548, 601 S.W.2d 881 (1980). In this case, the judge's nephew handled the prosecution. That is of no real significance, because the trial judge had a duty to recuse himself under the same section of the Arkansas Code of Judicial Conduct that applied in the preceding case. The defendant was arraigned and pled guilty. Defendant made no objection and did not request that the trial judge disqualify himself. The trial judge made no attempt to obtain a waiver. Arkansas had previously held that under the circumstances the trial judge had a duty to recuse *sua sponte*. The Arkansas Supreme Court reversed the conviction and remanded for a new arraignment and further proceedings. The case was *not* decided on due process grounds. The essence of the holding is that a trial judge's failure to disqualify *sua sponte*, as required by the Code of Judicial Conduct, is reversible error. It is of some significance that the defendant did not raise the issue either at trial or in his petition for post-conviction relief. The Arkansas Supreme Court raised the issue on its own and decided it on a basis other than due process.

I also note that Professor E. Thode, in his Reporter's Notes to Code of Judicial Conduct 60 (1973), stated that "[a]lthough the specific standards [under Canon 3C(1)] cover most of the situations in which the disqualification issue will arise, the general standard should not be overlooked. Any conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's 'impartiality might reasonably be questioned' is a basis for the judge's disqualification."

The official commentary to Canon 3C provides that although the relationship may not fall within a specifically prohibited province of Canon 3C, under appropriate circumstances, the fact that "his impartiality might reasonably be questioned" under Canon 3C(1) may require the judge's disqualification. ABA Code of Judicial Conduct, Canon 3C(1)(d) (1972). See also ABA Comm. on Ethics and Professional Responsibility, Informal Op. 1260 (1973).

In Note, *Disqualification of Judges*, 86 Harv. L. Rev. 736, 745 (1973), in evaluating the general disqualification standard of Canon 3C(1), the author states:

"The test actually adopted in the *Code*, however, seeks to guarantee not only that a biased judge will not participate but also that no reasonable person will suspect

as much; the *appearance* of impartiality throughout the judiciary is the goal. The fact that the *Code* adopts the standard of a reasonable man knowing all the facts does not reduce this emphasis on appearance." (Emphasis original.)

That explanation is consistent with language in our Kansas Supreme Court decisions. See, *e.g., Thompson v. Barnette,* 170 Kan. 384, 391, 227 P.2d 120 (1951), wherein the Supreme Court, prior to the adoption of our Kansas Code of Judicial Conduct, stated that even though the trial judge's relationship to a party was too remote to require disqualification under a statute requiring disqualification within certain degrees, the "better practice would dictate that  .  .  .  a trial judge should apprise the parties beforehand and step aside, if so requested," but held it was not reversible error.

In the case before us, the administrative judge expressed concern that if the trial judge in this case disqualified himself, then any judge who has a child working in any law enforcement agency or any prosecutor's office in the state would be subject to recusal in any criminal matter. In my opinion, that result does not and should not follow. A reasonable person could not reasonably question the impartiality of a judge under those circumstances any more than one could say that if a judge's lawyer relative were with a law firm that represents insurance carriers, injured plaintiffs, banks, school boards, unions, et cetera, the judge would be disqualified in all cases involving those kinds of actions, even though the lawyer relative had no direct or indirect connections with the case. While some facts might require recusal, in most instances the mere representation of parties engaged in similar fields of the law is too remote.

I would emphasize that I have examined the record in this case and have no reason to, nor do I, question the integrity or impartiality of the trial judge or his son. The district attorney and his staff handled the cases professionally and properly. The test, however, is not whether the trial judge believes he can be and in fact is impartial. It is whether a reasonable person *might* reasonably question the impartiality of the judge. The test is one of foresight, not hindsight; we should look at the facts before trial, not at the transcript. In my opinion, whether an accused or an accused's lawyer or family and friends might reasonably question the impartiality of the trial judge should be given considerable weight, although those parties obviously would have a stake

in the matter and cannot be said to be a substitute for the reasonable person test.

I do doubt there are many persons connected with the defense of criminal cases who would want the trial to be conducted by a judge who has a child employed as a lawyer in the prosecutor's office. For those who do, there is a provision in the code for the judge to disclose on the record the basis of disqualification, and the accused and his or her lawyer may agree in writing that the judge's relationship is immaterial and the judge may then preside. Rule 601, Canon 3D (232 Kan. ccv).

In my opinion, most reasonable people would question a judge's ability to be impartial when the judge has a child who, as an attorney in the prosecutor's office, participates and/or gives advice in similar cases that are tried before other judges in the same judicial district.

In summary, the affidavit of prejudice filed by the defendant in this case was based on K.S.A. 20-311, and that statute does not require disqualification. The failure of a trial judge to recuse pursuant to the general disqualification provision of Canon 3C(1) of the Kansas Code is not reversible error in a criminal case unless the accused can show he was denied due process of law, which requires a showing of a judge's actual bias or prejudice. The defendant makes no such showing, and my examination of the record shows none. Thus, I join my colleagues in affirming the case.