No. 55,320

STATE OF KANSAS, *Appellee,* v. CLAYTON LOGAN, *Appellant.*

(689 P.2d 778)

Opinion filed October 26, 1984.

*Charles A. O'Hara,* of O'Hara, Busch, Johnson & Falk, of Wichita, argued the cause and was on the brief for the appellant.

*Geary N. Gorup,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Clark V. Owens,* district attorney, were with him on the brief for the appellee.

*Kenneth R. Smith,* assistant attorney general, was on the brief for the *amicus curiae,* Office of the Attorney General Robert T. Stephan.

The opinion of the court was delivered by

SCHROEDER, C.J.: This case is before the court on a Petition for Review of the decision of the Court of Appeals found at 9 Kan. App. 2d 353, 678 P.2d 181 (1984). Clayton Logan (defendant-appellant) appealed the denial of his motion for disqualification of the trial judge due to bias. The basis of his motion for a new trial was two-fold: (1) that defendant's original attorney was incompetent, and (2) that the trial judge was biased because his son worked as an assistant district attorney for the same judicial district in which the judge presided. The Court of Appeals affirmed the denial of the motions, but went on to advise the trial court judge to recuse himself from cases prosecuted by the district attorney's office as long as his son continued to be employed there. We granted review.

The facts are set out in the Court of Appeals opinion, 9 Kan. App. 2d at 353-54, but for purposes of review an expanded version is warranted. In May of 1981, a jury convicted defendant Logan of the sale of methamphetamine in violation of K.S.A. 65-4107(d)(3) and 65-4127b(b)(2). Defendant's direct appeal to the Court of Appeals was affirmed in an unpublished opinion (No. 53,502 filed July 9, 1982).

During the original trial and on appeal, the defendant was represented by attorney Lyle Britt. At the trial, Britt had defendant testify as to certain prior convictions. Britt, being mistaken as to the law, believed these convictions could be brought out on cross-examination. Therefore, following Britt's advice, defendant disclosed only his prior convictions involving dishonesty, namely, felony burglary and robbery. The last of these offenses had occurred some nine years prior to the offense upon which defendant was being tried. The jury was led to reasonably believe that defendant had been convicted of only those offenses which the defendant had enumerated. In fact, the most recent

offense for which the defendant was convicted was the sale of drugs (LSD). The State attempted to bring this fact out on cross-examination, but the defendant, at the direction of his attorney, pled the Fifth Amendment and refused to testify as to his conviction of the previous drug offense. The trial court instructed the jury that it was to disregard this testimony in deciding the guilt or innocence of the defendant on the present charges.

Judge Owen Ballinger presided at the trial. As noted above, his son was a prosecuting attorney employed by the district attorney of Sedgwick County — the same district over which his father presides. Although it was not alleged that the judge's son was in any way involved in this case, defendant believed the relationship was sufficient evidence of the court's bias and prejudice as to constitute denial of a fair trial.

Following the affirmation of defendant's conviction on appeal, defendant, represented by new counsel, moved for a new trial. Prior to the hearing on that motion, defendant's motion for disqualification of Judge Ballinger was heard and denied by the assigned judge. Evidence was then presented on the motion for new trial and it was denied by Judge Ballinger.

The Court of Appeals affirmed, treating the issues raised as having been filed and considered by the trial court under K.S.A. 60-1507. 9 Kan. App. 2d 353.

In the Court of Appeals decision, the defendant's trial counsel was found to have provided competent services, and the defendant's claim to the contrary provided no basis for setting aside the judgment and sentence.

The Court of Appeals also denied the defendant's complaint that the trial judge was biased. After reviewing portions of Canons 2 and 3 of the Code of Judicial Conduct as set forth in Supreme Court Rule 601, 232 Kan. cci, the Court of Appeals resolved the issue as follows:

"The facts of this case show only that the trial judge's son was on the staff of the Sedgwick County district attorney's office as an assistant district attorney during the pendency of this action. The facts do not support any finding whatsoever that the defendant's right to a fair trial was impeded, infringed upon, or denied by the connection here disclosed. We find that defendant was not prejudiced in any way, and his sentence and conviction should not be set aside on this ground. However, to eliminate this question being raised in future proceedings, we would deem it appropriate for Judge Ballinger to recuse himself from cases

pending before him which the district attorney's office is prosecuting while his son is employed on its staff." 9 Kan. App. 2d at 355.

In a concurring opinion, Judge Abbott agreed that Judge Ballinger's son was neither a party nor an attorney of record in this action. Judge Abbott noted that the defendant's motion to disqualify the district court judge and its supporting affidavit were insufficient under K.S.A. 20-311d. Judge Abbott concurred with the advisory ruling as well because a reasonable person with knowledge of all the circumstances might question the impartiality of the judge (Rule 601, Canon 3C[1], [232 Kan. cciii]). He also noted that there was no showing of actual bias or prejudice, and therefore the defendant received a fair trial.

We first review whether defense counsel's mistake as to the admissibility of defendant's prior convictions was prejudicial to the extent that defendant did not receive a fair trial. The rules relative to determination of effective assistance of counsel were stated in *Schoonover v. State*, 2 Kan. App. 2d 481, Syl. ¶¶ 2-4, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978), and have been reiterated by this court in *State v. Tyus*, 232 Kan. 325, 654 P.2d 947 (1982), *State v. Crossman*, 229 Kan. 384, 624 P.2d 461 (1981), and *State v. Voiles*, 226 Kan. 469, 601 P.2d 1121 (1979), as follows:

"The right to effective assistance of counsel presupposes that counsel will be competent and capable of conducting a genuine defense on behalf of the accused. While the law does not guarantee the assistance of the most brilliant and experienced counsel, it does require honest, loyal, genuine and faithful representation on the part of counsel, be he retained or appointed."

"Conduct of defense counsel which is so dishonest, incompetent or inadequate as to amount in practical effect to no counsel at all clearly violates a defendant's Sixth Amendment right to counsel. However, conduct which amounts to a substantial deviation from that expected of a reasonably competent lawyer in the community, such that no lawyer of average ability would engage in it, and which causes the client's conviction or otherwise works- to the client's substantial disadvantage, is also a deprivation of the constitutional guarantee of 'effective' counsel."

"In applying the foregoing standard to counsel's performance, the effective assistance of counsel cannot be equated with the successful assistance of counsel. The adequacy of an attorney's services on behalf of an accused must be gauged by the totality of his representation, not by fragmentary segments analyzed in isolated cells." 2 Kan. App. 2d 481, Syl. ¶¶ 2-4.

Applying this "totality of representation" approach to the present case requires that before we can find the defendant was denied effective assistance of counsel, we must determine

whether counsel's conduct fell below the acceptable level of "reasonable competency." If the counsel's act was the result of a reasonable defense tactic, then this court will find his assistance to have been competent and effective. *State v. Crossman,* 229 Kan. at 390, *State v. Carter,* 220 Kan. 16, 23, 551 P.2d 821 (1976). Further, if it appears that a new trial, wherein the mistake complained of would not be repeated, would in all likelihood not result in acquittal, then we will be unable to say his counsel was incompetent. *State v. Brown,* 204 Kan. 430, 434, 464 P.2d 161 (1970); *People v. Garcia,* 398 Mich. 250, 247 N.W.2d 547 (1976).

In the present case, had defendant's counsel not brought out on direct examination defendant's prior convictions involving dishonesty, the State would have been unable to cross-examine defendant on his conviction for sale of LSD. See *State v. Harris,* 215 Kan. 649, 527 P.2d 949 (1974); K.S.A. 60-420, -421, -422; K.S.A. 60-447, -448, -449, -450, -455. The disclosure to the jury that defendant had previously been convicted of the same type of crime could easily have prejudiced its thinking. Additionally, the posture in which that evidence was disclosed made the defendant appear to be lying.

Although counsel intended to be using a reasonable defense tactic, he was operating under a misunderstanding of the law by believing the State would be able to bring out the prior convictions involving dishonesty when they cross-examined the defendant. Counsel was attempting to "lessen the sting" to the jury and enhance the defendant's credibility. At the motion for new trial, counsel admitted that had he correctly understood the law, he would not have had defendant testify as to his prior convictions.

It appears that defendant's credibility was damaged by his counsel's advice and this advice was not the result of a reasonable trial strategy. Nonetheless, when the conduct of defendant's counsel is gauged by the totality of his representation, it seems that the trial court did not abuse its discretion in finding defendant's counsel was reasonably competent. He was well prepared, lodged numerous objections to evidence, and argued thoroughly his motion for a directed verdict and a motion in limine. Counsel's misunderstanding of the law concerning defendant's prior convictions and the circumstances under which the defendant could plead the Fifth Amendment were his only

apparent errors. Additionally, it is not apparent the defendant would have been acquitted in the absence of his counsel's error, since the jurors may have chosen to believe the State's version of the events even if defendant's credibility had not been shaken.

A comparable situation was presented to this court in *State v. Wright*, 203 Kan. 54, 453 P.2d 1 (1969). The defendant was on trial for rape. His attorney, although he had some 35 years experience in the practice of law, was unaware of K.S.A. 60-421 which would have prevented the State from questioning the defendant on his prior convictions. Just as in the present case, Wright's counsel questioned him on some of his past convictions leaving out the prior rape offense which was then brought out on cross-examination. The trial court instructed the jury not to consider any evidence of defendant's prior record in reaching its decision. This court determined that the error by counsel was not prejudicial to the defendant.

In the present case, a limiting instruction was given to the jury that evidence of defendant's prior crimes could be considered solely for the purpose of determining defendant's credibility. We must assume the jury followed these instructions instead of considering the evidence as proof of guilt. Accordingly, we find that Logan was not prejudiced by his counsel's mistake and there is no basis for granting a new trial on this ground.

Consideration of effective assistance of defense counsel was recently before the United States Supreme Court in *Strickland v. Washington*, 466 U.S. _____, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984).

Was the defendant herein denied a fair trial because the trial judge was partial to the prosecution?

The motion for new trial was premised on K.S.A. 20-311 which provides:

"In any contested civil or criminal case before a district court of this state, if any *attorney of record* or any *party* to such case is related, by blood or marriage to the judge before whom the same is pending, as a spouse, parent, *child*, grandchild, grandparent, brother or sister, or is related to such judge as a result of being a spouse of any such parent, *child*, grandchild, grandparent, brother or sister, the judge shall be disqualified from hearing said case." (Emphasis added.)

The assigned judge hearing this matter was correct in finding that Judge Ballinger's son was not an attorney of record based on his employment when he did not actually participate in the case.

Being a party to the lawsuit is interpreted to mean having a

financial interest in the outcome of the lawsuit. Obviously, Judge Ballinger's son was not a "party" to this action, where that term is given a narrow and technical meaning.

In *Brown v. Brown*, 103 Kan. 53, 56, 172 Pac. 1005 (1918), the term "party," as used in constitutional and statutory provisions intended to disqualify a judge, was interpreted to mean having a financial interest in the outcome of the lawsuit. It was there held, if a judge is related to an attorney in the cause whose fee is contingent upon success, or the amount of the fee is to be fixed and determined by the court, the attorney is a "party."

Under the *Brown* case, Judge Ballinger's son was not a party to this action. Accordingly, Judge Ballinger was not automatically disqualified under K.S.A. 20-311.

In his motion for new trial, defendant submitted an affidavit of prejudice according to the procedure specified in K.S.A. 20-311d(b)(5), which provides:

"(b) Grounds which may be alleged as provided in subsection (a) for change of judge are:

. . . . .

"(5) That the party filing the affidavit has cause to believe and does believe that on account of the personal bias, prejudice, or interest of the judge such party cannot obtain a fair and impartial trial or fair and impartial enforcement of post judgment remedies. *Such affidavit shall state the facts and the reasons for the belief that bias, prejudice, or an interest exists.*" (Emphasis added.)

Defendant's affidavit states, in pertinent part:

"4. This is a conflict of interest that I believe makes Judge Ballinger prejudicial against me and all defendants. His son works for the same person that is trying to have me convicted.

"5. I feel that Judge Ballinger's action against me, his demeanor in the Courtroom, and his personal actions show he personally dislikes me."

The assigned judge ruled that defendant's affidavit was legally insufficient because it merely stated opinions and beliefs and did not state any factual basis to support such opinions and beliefs. We agree defendant's general allegations do not meet the statutory requirement that the defendant state the facts and reasons to support an allegation of bias. See *Hulme v. Woleslagel*, 208 Kan. 385, 493 P.2d 541 (1972); *Schoonover v. State*, 2 Kan. App. 2d 481. Therefore, the statutes, K.S.A. 20-311 *et seq.*, do not require automatic disqualification, nor disqualification due to bias or prejudice, since the defendant failed to allege sufficient facts in his affidavit.

Should the trial judge have recused himself pursuant to the Kansas Code of Judicial Conduct, Rule 601, Canon 3C(1), 232 Kan. cciii? In other words, did failure of the trial judge to step aside result in bias and prejudice to the defendant which was a denial of due process constituting reversible error? In deciding if defendant received a fair trial we are looking beyond the K.S.A. 20-311d(b)(5) affidavit to the merits of the allegations of bias. Here a two-part analysis is involved in making the fair trial determination: (1) Did the trial judge have a duty to recuse himself from this case and cases like it in the future, under Canon 3C(1)? (2) If he did have a duty to recuse and failed to do so, was there a showing of actual bias or prejudice to warrant setting aside the judgment of the trial court?

Canon 3C(1) provides that "a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned." Although this Canon has not been construed in Kansas, federal cases offer guidance in their interpretation of 28 U.S.C. § 455(a) (1982), which also requires disqualification if the judge's impartiality might reasonably be questioned. The standard which federal courts use is whether the charge of lack of impartiality is grounded on facts that would create reasonable doubt concerning the judge's impartiality, *not* in the mind of the judge himself, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person with knowledge of all the circumstances. *United States v. Martorano,* 620 F.2d 912 (1st Cir.), *cert. denied* 449 U.S. 952 (1980); *United States v. Gigax,* 605 F.2d 507 (10th Cir. 1979).

According to the above standard, we must determine whether a reasonable person on the street — not Logan or his attorney, and not Judge Ballinger — would question the judge's impartiality. Although no federal cases are directly on point, two cases involve similar fact situations and offer guidance in making the "reasonable person" determination. In *United States ex rel. Weinberger v. Equifax, Inc.,* 557 F.2d 456 (5th Cir. 1977), *cert. denied* 434 U.S. 1035 (1978), the judge's son was an associate in the same law firm as the defendant's attorney. The court found this was not a situation where a reasonable man would question the judge's impartiality. The court distinguished *SCA Services, Inc. v. Morgan,* 557 F.2d 110 (7th Cir. 1977). In the latter case the judge's brother was a senior partner in a firm representing one of

the parties to the lawsuit. Although the brother wasn't actively participating in the case, the court found that the judge should have recused himself under 28 U.S.C. § 455(b)(5)(iii) because the brother was "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding." The "interest" was the possibility of financial gain to all partners if the case was decided in their favor, as well as the nonpecuniary interests of reputation and goodwill. The *Morgan* court went on to find this to be a situation where the judge's impartiality might be questioned because the judge and his brother would be inclined to support each other's "interests."

The *Weinberger* court found that an associate had no pecuniary interest in the outcome of the case as did the partner in *Morgan*. Therefore, recusal was not required under § 455(b)(5)(iii). The court went on to find that this apparently was an impartial situation. The implication is that the "financial interest" was the determinative factor. The *Weinberger* court did not discuss the nonpecuniary interests of reputation and goodwill, but it seems that an associate would share in these interests, and so the conclusion follows that these nonpecuniary interests, standing alone, will not create an appearance of partiality.

In the present case, Judge Ballinger's son was not a partner or an associate in a law firm; instead, he worked as a public servant in the district attorney's office. In this situation, there is no financial interest in the outcome of criminal cases prosecuted by the D.A.'s office, nor is there an interest in goodwill. There would seem to be an interest in the reputation. Under the *Weinberger* approach, this interest in reputation, without the financial interest, is not enough to create an appearance of partiality in Judge Ballinger.

Arguably, there may be a "pro-prosecution" bias created by the situation herein involved which was not present in the law firm situations. There are no cases which discuss this possibility. However, it seems unlikely that a reasonable person would believe that a judge's propensity to convict criminal defendants would increase because his son works as a prosecutor. If we were to find a "prosecution bias" in this situation, it would seem that the next logical step would be to find, for example, a "pro-medical practioner bias" if a judge with a doctor-son were hearing a medical malpractice case. This result is too far-reaching. Therefore, we do not find prosecution bias in this situation.

One of the purposes of the Code of Judicial Conduct is to maintain public confidence in the integrity of the judicial process. See Note, *Disqualification of Judges and Justices in the Federal Courts,* 86 Harv. L. Rev. 736, 746 (1973). Even before the Code was enacted, this court adhered to the proposition that no judge shall hear and determine a case in which he is not wholly free, disinterested, impartial and independent. *In re Estate of Hupp,* 178 Kan. 672, 291 P.2d 428 (1955), *Tootle v. Berkeley,* 60 Kan. 446, 56 Pac. 755 (1899). On the other hand, this court has said that "everyone is entitled to a fair trial before an unbiased and impartial judge, but judges have had to try cases in which they were acquainted with one or both parties, the families of the parties, and with counsel of the parties since time immemorial." *Leverenz v. Leverenz,* 183 Kan. 79, 85, 325 P.2d 354 (1958).

As we view this case from the perspective of a "reasonable person" and as we apply the rationale of the federal cases, we find this is not a situation where there is an appearance of partiality. The judge's son was not even remotely involved in the preparation of this case. We cannot say that this judge would appear to the reasonable person to be anything but "wholly free, disinterested, impartial and independent." *In re Estate of Hupp,* 178 Kan. 672. Moreover, the judge's son will not be affected — financially or otherwise — by the outcome of the case.

For these reasons, we find that the Court of Appeals was incorrect in advising Judge Ballinger to recuse himself from cases pending before him which the district attorney's office is prosecuting while his son is employed on its staff.

We do agree with the Court of Appeals that, even if Judge Ballinger should have recused himself, there was no showing of bias or prejudice in this case, and thus no reversible error. See *Dyas v. Lockhart,* 705 F.2d 993 (8th Cir. 1983). We have carefully gone over the trial record in this case and are convinced that, as far as the judge's demeanor is concerned, the defendant was afforded a fair trial. The defendant alleged that the judge made prejudicial remarks in front of the jury, but this allegation is not supported by the record. The defendant also claimed that the imposition of the habitual criminal sentence demonstrates the court's prejudice. This claim is without merit since the judge

was acting within his authority under the law. Judge Ballinger conducted the trial free from bias or prejudice and we find no reversible error.

The judgment of the Court of Appeals is affirmed as modified, and the judgment of the trial court is affirmed.

MILLER, J., concurring: I agree with the majority's disposition of this case and with the Chief Justice's opinion, with one exception. I think it preferable, as did the Court of Appeals, for a trial judge to recuse himself from the trial of criminal cases or, as suggested by Judge Abbott, to offer to do so on the record, when his son is an attorney on the staff of the local prosecutor.

Sedgwick County has the largest prosecutorial staff in the state. Judge Ballinger's son was chief of the consumer fraud division in that office and, as I understand it, handled no chapter 21 prosecutions. Even so, in the public's eye Mr. Ballinger was a prosecutor.

Should the rule be different in larger counties than it is in smaller counties where there are but two lawyers in the county attorney's office? I think not. I would make the same suggestion regardless of the size of the prosecutor's staff. Recusal in such cases gives the *appearance* of propriety and impartiality and is, in my view, the preferred course.

Like my esteemed associates and the learned judges of the Court of Appeals, I do not for a moment question Judge Ballinger's fairness and impartiality; and I find no reversible error in this record. But I respectfully suggest that the preferred course of action for a trial judge, should a similar situation again arise, is recusal or offer of recusal. Such action would best reflect the spirit of the Canons.