No. 54,071

STATE OF KANSAS, *Appellee,* v. WILLIS PERRY TYUS, *Appellant.*

(654 P.2d 947)

Opinion filed December 3, 1982.

*Wendell Betts,* of Topeka, was on the brief for the appellant.

*Robert T. Stephan,* attorney general, *Gene M. Olander,* district attorney, and *Joan Hamilton,* assistant district attorney, were on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal in a criminal action in which Willis P. Tyus (defendant-appellant) appeals a jury verdict finding him guilty of two counts of aggravated robbery (K.S.A. 21-3427). The appellant claims error based on (1) the failure of the trial court to give a cautionary instruction on the credibility of

eyewitness testimony, (2) the trial court's refusal to give a cautionary instruction on the unreliability of accomplice testimony, and (3) ineffective assistance of counsel.

The appellant and Orville M. Smith were arrested and charged with the armed robbery of two supermarkets in Topeka, Kansas. The following relevant facts were developed at trial. On January 25, 1981, the C & W Market was robbed at gunpoint by two black males shortly before closing time. Three employees, Christopher Shireman, Dane Weller, and Bobbett Garetson, were in the store at the time and witnessed the robbery. One of the robbers was described by the witnesses as being taller than the other robber, having a mustache and slight growth of beard.

Christopher Shireman and Dane Weller were asked to identify the robbers from a photographic lineup on February 9, 1981. Shireman positively identified the appellant from the lineup as the taller of the two robbers with the growth of beard, but was unsure about the other robber. Weller was unable to positively identify either of the two men. A few weeks prior to trial Bobbett Garetson positively identified the appellant from the lineup as one of the robbers. All three employees positively identified the appellant at trial.

Detective Michael Padilla from the Topeka Police Department received a telephone call on February 6, 1981, from a woman who indicated she had information about the robbery of the C & W Market. Detective Padilla met with Yvette Oliver, a one-time girlfriend of Orville M. Smith and an acquaintance of the appellant, at the Kansas City, Missouri, police department. Miss Oliver told Detective Padilla, and later testified, that she had overheard Smith and the appellant plan the robbery, and had seen the two men with money bags and checks belonging to the C & W Market, which had been taken during the robbery. Miss Oliver's descriptions of the physical appearance of the two men, what they were wearing the night of the robbery, and other facts surrounding the robbery were consistent with the descriptions and facts related to police by the witnesses. Detective Padilla testified that Miss Oliver indicated future robberies were planned by the appellant and Mr. Smith around the Topeka area, including one at Harry's I.G.A.

On February 8, 1981, Harry's I.G.A. was robbed by two armed black males shortly before the store was to close for the night.

Present in the store at the time were four employees, Dan Gooch, Stacy Mallory, Daniel Piles, and Kurt Harness; a customer, Mary Gregoriew; and a janitor, Roland Goslin. The man described by witnesses as being the taller of the two robbers had a light beard and wore glasses. Following a high speed car chase after the robbery, police apprehended Orville Smith and Yvette Oliver. A third suspect escaped on foot. Most of the money items stolen from Harry's I.G.A. were recovered from the car along with a wallet containing the appellant's driver's license and a pair of surgical-type gloves like those worn by the taller robber during the robbery. Also, a pair of glasses similar to ones described as being worn by the appellant during the robbery were found a short distance from where the suspects' car had momentarily come to a stop during the chase.

The following day the witnesses to the robbery were asked if they could identify the robbers from a photographic lineup. Kurt Harness and Daniel Piles both positively identified Smith as the shorter robber and the appellant as the taller robber. Dan Gooch and Roland Goslin could positively identify Smith as the shorter of the two men, but neither could identify the appellant. Stacy Mallory positively identified the appellant as the taller robber, but did not recognize the shorter man. Mary Gregoriew could not identify either of the robbers. With the exception of Mr. Goslin, all these witnesses positively identified the appellant at trial as the taller of the two robbers.

The appellant first claims as error the failure of the trial court to give a cautionary instruction on the factors to be considered in weighing the credibility of eyewitness testimony. The sole defense relied on at trial was mistaken identity. In *State v. Warren,* 230 Kan. 385, Syl. ¶ 1, 635 P.2d 1236 (1981), this court held in a criminal action in which eyewitness identification is a critical part of the prosecution's case and there is a serious question about the reliability of the identification, a cautionary instruction should be given advising the jury as to the factors to be considered in evaluating the credibility of eyewitness testimony.

The appellant readily acknowledged trial counsel did not request an instruction on eyewitness testimony. However, the appellant contends the trial court had a duty to give an instruction even in the absence of a request, relying on *State v. Antwine,* 4 Kan. App. 2d 389, 396, 607 P.2d 519 (1980), which states:

"An accused is entitled to instructions on his theory of defense if that theory is supported by any evidence whatsoever (*State v. Christon*, 3 Kan. App. 2d 372, 375, 595 P.2d 356 [1979]), and it does not matter that the only evidence adduced is the unsupported testimony of the defendant. *State v. Sullivan & Sullivan*, 224 Kan. 110, 120, 578 P.2d 1108 (1978)."

The appellant's reliance on this statement of legal principles for his position is clearly misplaced. The opinion in *Antwine* sets forth the additional rules of law immediately following the language cited above by the appellant.

"The law is also well established that the trial court has a duty to instruct on lesser included offenses even though such instructions have not been requested. *State v. Sullivan & Sullivan* at 120; K.S.A. 21-3107(3). *If an accused fails to give the grounds for an objection, or fails to request an instruction on something other than a lesser included offense, then the accused may not claim error unless the court's action is clearly erroneous. State v. Worth*, 217 Kan. 393, 395, 537 P.2d 191 (1975), *cert. denied* 423 U.S. 1057 (1976)." 4 Kan. App. 2d 396-97. (Emphasis added.)

It is well established that a party waives the right to contest instructions given by the trial court unless an objection is lodged thereto or additional instructions are requested before the jury retires to consider its verdict, unless the instruction is clearly erroneous. See K.S.A. 22-3414(3). Recently, in *State v. Moore,* 230 Kan. 495, 497-98, 639 P.2d 458 (1982), decided after *Warren,* we held the trial court's failure to give an eyewitness instruction, after denying the defendant's request to obtain expert testimony on eyewitness identification, was not error where such an instruction was not requested.

Upon examining the record we conclude the failure to give an eyewitness instruction was not clearly erroneous. Where eyewitness identification plays a material part in the State's case the appellant must first show the identifications are unreliable before an instruction becomes necessary. Although eight of the nine witnesses to the robberies positively identified the defendant at trial as the taller of the two robbers, the appellant claims the previous failure of some of these witnesses to identify either the appellant or Smith, the co-participant, from the photographic lineup renders their subsequent in-court identification unreliable.

This contention is without merit. At the outset, we fail to see how the witnesses' ability or inability to identify Smith from the lineup has any bearing on the identification of the appellant at trial. Nevertheless, of the nine witnesses, five identified the

appellant and four identified Smith from the lineup. On cross-examination the appellant's attorney was unable to seriously impair the credibility of any of the eight witnesses who identified the appellant at trial as the taller robber. The descriptions provided by the witnesses of the appellant were consistent with each other and with the actual physical description of the appellant. The eyewitness testimony was corroborated in large part by the testimony of Yvette Oliver and other circumstantial evidence presented at trial by the State. For example, Oliver's description of the clothing worn by both men the night of the C & W Market robbery matched the witnesses' descriptions of the clothing worn by the robbers. Oliver testified that she had waited in the· car while Smith and the appellant robbed Harry's I.G.A. The surgical-type gloves found in the suspects' car and the pair of glasses found in the area where the car had stopped during the chase were similar to those described by the witnesses as having been worn by the appellant during the second robbery. In addition, the appellant's driver's license was found in a wallet in the car.

The facts of this case are materially different from those in *Warren.* Serious questions about the reliability of the identification testimony were raised in that case where the only witness to testify at trial viewed the robber for fifteen to twenty seconds and identification was made four and one-half months after the robbery under questionable circumstances. The identification by the witness contained several inconsistencies and contradictions, and its reliability was seriously questioned by this court. In the instant case credibility was given to the eyewitness identification by the additional evidence presented by the State which served to remove any serious question about the uncertainty of the previous identifications from the photographic lineup. A general instruction was given by the court on the weight and credibility to be given the testimony of the witnesses. The appellant waived any right to a more specific instruction on eyewitness testimony by failing to request an additional instruction.

The appellant next contends the trial court erred in refusing the appellant's request for a cautionary instruction on the credibility of accomplice testimony. Defense counsel argued to the trial court that Yvette Oliver was an aider and abettor in the Harry's I.G.A. robbery and a coconspirator in the robbery of the C & W Market. This was based on Oliver's testimony that she accompa-

nied the appellant and Smith from Kansas City to Topeka and sat in the car during the robbery of Harry's I.G.A. and had supplied wirecutters to the two men to enable them to cut the alarm and telephone wires at the C & W Market. Although Oliver claimed she was not involved in the Harry's I.G..A. robbery and did not know the appellant and Smith were going to commit the robbery until after they had reached Topeka, she testified she was in on the planning and scheming of the C & W Market robbery and knew what the wirecutters were to be used for.

Recently in *State v. Moody,* 223 Kan. 699, 702, 576 P.2d 637 (1978), we stated that where accomplice testimony is fully corroborated and amounts to mere cumulative evidence, and the jury is instructed on their duty to consider the weight of the evidence and credibility of witnesses, failure of the court to give a cautionary instruction on accomplice testimony does not constitute reversible error. However, it is error not to give the instruction where accomplice testimony is only partially corroborated and a cautionary instruction is requested. See also *State v. Warren,* 230 Kan. at 400; *State v. Parrish,* 205 Kan. 178, Syl. ¶ 5, 468 P.2d 143 (1970); *State v. Wood,* 196 Kan. 599, 413 P.2d 90 (1966). In *State v. Moore,* 229 Kan. 73, 80-81, 622 P.2d 631 (1981), we held that while it may be error for a trial court to refuse to give a requested instruction on accomplice testimony, whether that error is prejudicial and reversible depends upon the extent and importance of the accomplice testimony and the extent of the corroborating evidence. Where there is substantial material corroboration of the accomplice testimony the failure to give the requested instruction is not prejudicial and does not constitute reversible error.

Yvette Oliver's testimony was an important part of the State's case. A careful review of the record shows that much of Oliver's testimony was corroborated by the testimony of Detective Padilla, various police officers and the eyewitnesses.

Following her testimony, Oliver was subjected to an extensive cross-examination. Her prior criminal record, involvement with the appellant, and participation in the robberies was brought out in detail. It was obvious defense counsel intended to raise doubts in the jurors' minds about Oliver's credibility. While every aspect of the testimony was not corroborated fully, there was substantial material corroboration of that part of Oliver's testimony which criminally implicated the appellant in the robberies, and her story

remained substantially the same throughout the investigation and trial. Although it would have been "better practice" for the trial court to give the cautionary instruction after its request, failure to do so was not unduly prejudicial and does not constitute reversible error.

As his final point on appeal the appellant contends he was denied effective assistance of counsel by the failure of the appellant's trial counsel, Joel W. Meinecke, to call Orville Smith, the co-participant in the robberies, to testify in the appellant's behalf at trial. A plea of nolo contendere was entered by Smith to one count of robbery and the other count was dismissed as a result of plea negotiations. At a hearing on appellant's motion for new trial, Smith testified that he had talked with Mr. Meinecke twice prior to the appellant's trial and had indicated to Mr. Meinecke that he would testify at the appellant's trial that the appellant was not the person who was with him during the two robberies. He refused, however, to reveal the name of the person who allegedly did participate in the crimes. The court overruled the motion for new trial, finding Smith's testimony was not newly discovered evidence and sufficient evidence was presented at trial for the jury to find the appellant had committed the robberies.

The test relative to the determination of whether a criminal defendant has been denied effective assistance of counsel was stated in *Schoonover v. State,* 2 Kan. App. 2d 481, Syl. ¶¶ 2-4, 582 P.2d 292, *rev. denied* 225 Kan. 845 (1978), as follows:

"The right to effective assistance of counsel presupposes that counsel will be competent and capable of conducting a genuine defense on behalf of the accused. While the law does not guarantee the assistance of the most brilliant and experienced counsel, it does require honest, loyal, genuine and faithful representation on the part of counsel, be he retained or appointed.

"Conduct of defense counsel which is so dishonest, incompetent or inadequate as to amount in practical effect to no counsel at all clearly violates a defendant's Sixth Amendment right to counsel. However, conduct which amounts to a substantial deviation from that expected of a reasonably competent lawyer in the community, such that no lawyer of average ability would engage in it, and which causes the client's conviction or otherwise works to the client's substantial disadvantage, is also a deprivation of the constitutional guarantee of 'effective' counsel.

"In applying the foregoing standard to counsel's performance, the effective assistance of counsel cannot be equated with the successful assistance of counsel. The adequacy of an attorney's services on behalf of an accused must be gauged by

the totality of his representation, not by fragmentary segments analyzed in isolated cells."

These rules have often been reiterated by this court. See, *e.g., State v. Crossman,* 229 Kan. 384, 389, 624 P.2d 461 (1981).

Although the appellant concedes trial counsel was *not* incompetent nor dishonest, he claims the representation afforded him falls within the "area of uncertainty" between effective assistance of counsel and incompetent representation recognized in *Schoonover* where the "totality of representation" must be considered. This contention is based solely upon Mr. Meinecke's failure to call Orville Smith as a witness on behalf of the appellant.

Evidence in the record reflects there was doubt concerning the credibility of Orville Smith's testimony. During the hearing on the motion for new trial, Smith testified he had told Mr. Meinecke during their first visit that after being sentenced he intended to send the Shawnee County District Attorney a name taken from a newspaper obituary column and indicate that was the person who had helped him commit the robberies. The trial judge indicated during the hearing that he was aware through Mr. Meinecke that the story told by Smith at the hearing was contrary to that told to Mr. Meinecke prior to trial.

The Code of Professional Reponsibility provides that a lawyer shall not knowingly use perjured testimony, nor participate in the creation or preservation of evidence when he knows, or it is obvious, that the evidence is false. K.S.A. 1981 Supp. 7-125, DR 7-102(A)(4) and (6). See also *State v. Henderson,* 205 Kan. 231, 468 P.2d 136 (1970). In *State v. Banks,* 216 Kan. 390, 394-95, 532 P.2d 1058 (1975), we held the refusal of defense counsel to call an alibi witness because of his belief the witness intended to commit perjury did not violate the appellant's constitutional right to effective assistance of counsel.

Mr. Meinecke apparently believed Smith would not tell the truth if called to testify at trial, and, therefore, was prevented by the disciplinary rules from calling Smith as a witness. We further recognize that certain functions relative to the defense of an accused, including the decisions on what witnesses to call, rest within the sole province of the defendant's lawyer. See *Winter v. State,* 210 Kan. 597, Syl. ¶ 2, 502 P.2d 733 (1972).

Aside from not having had Smith called as a witness, the appellant cannot complain about his representation by Mr.

Meinecke during the course of trial. Every witness called for the prosecution was thoroughly cross-examined in an attempt to expose any inconsistency in their testimony. Mr. Meinecke met twice with Orville Smith prior to trial to ascertain whether his testimony would benefit the appellant. As previously discussed, Mr. Meinecke requested that the court give an instruction on accomplice testimony. During sentencing the trial court stated:

"I would also request that [Mr. Meinecke] hang on and see if there's any factual basis for an appeal, but now, I don't want to make it a mandatory thing, because I listened to the trial. I thought it was free of error. I thought it was well-tried. I thought the evidence was very clear and convincing. The Court's satisfied that, without blowing your own horn, I thought — I'm satisfied it was a fair trial without error."

Under the "totality of representation" test, it seems clear to the court the appellant's defense was conducted in a very competent and professional manner by trial counsel. The failure of counsel to call a defense witness for ethical reasons cannot be relied on as the basis for claiming the representation afforded the appellant falls below the acceptable level of "reasonably competent." We find no merit in the appellant's contention that he was denied effective assistance of counsel.

The judgment of the lower court is affirmed.