(740 P.2d 106)

No. 59,983

STATE OF KANSAS, *Appellee*, v. KEVIN G. LAKE, *Appellant*.
Petition for review denied September 9, 1987.

Opinion filed July 23, 1987.

*Martha J. Coffman*, assistant appellate defender, *Melissa Sheridan*, assistant appellate defender, and *Benjamin C. Wood*, chief appellate defender, for the appellant.

*Clarence D. Holeman*, assistant district attorney, *Clark V. Owens*, district attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before BRISCOE, P.J., PHILIP L. SIEVE, District Judge, assigned, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

WOLESLAGEL, J.: The defendant, Kevin G. Lake, directly appeals the sentence imposed following his guilty plea to a count of felony theft (K.S.A. 1986 Supp. 21-3701[a]) and a count of unlawful possession of a firearm (K.S.A. 21-4204[1][b]), and the denial of his motion to modify the sentence.

The information charged additional crimes and the guilty plea followed a plea agreement in which the State agreed to dismiss

the other counts, to recommend minimum concurrent sentences, and to abstain from invoking the habitual criminal statute. One dismissed count related to theft of a firearm from the Sedgwick County Courthouse. The theft to which Lake pleaded guilty related to hashish, also stolen from the courthouse. Mark Simmons was charged in the same indictment with burglary and felony theft. At the time of the thefts, both Lake and Simmons were employed as janitorial workers at the courthouse.

With the judge free to accept the terms of the plea agreement or to reject them, he chose the latter and imposed consecutive sentences. For the theft, a class E felony, he pronounced a one-to-two year term. The possible sentence was a minimum of one year and a maximum of two to five years. K.S.A. 1986 Supp. 21-4501(e). For unlawful possession of the firearm, a class D felony, he pronounced a one-to-five year term. The possible sentence was a minimum of one to three years and a maximum of five to ten years. K.S.A. 1986 Supp. 21-4501(d)(2). The judge then ran the sentences consecutively, resulting in a controlling term of two to seven years.

Lake claims his sentence is invalid for two reasons: (1) The court abused its discretion in sentencing Lake to consecutive terms and by failing to modify the sentence because of its failure to consider the sentencing guidelines set out in K.S.A. 21-4606 and K.S.A. 1986 Supp. 21-4601; and (2) the court committed judicial misconduct which prevented a fair sentencing proceeding, thus constituting a denial of due process guaranteed by the Fourteenth Amendment to the United States Constitution.

### Sentencing Guidelines Issue

Addressing the issues in order as stated above, we note that the pertinent part of K.S.A. 1986 Supp. 21-4601 provides that the particular circumstances and individual characteristics shall be considered in each case, and those who are not "dangerous offenders" should not receive more than minimum terms of imprisonment. K.S.A. 21-4606 supplements 21-4601 by providing seven nonexclusive factors a court should consider, if relevant, in setting "the lowest minimum term which, in the opinion of said court, is consistent with the public safety, the needs of the defendant, and the seriousness of the defendant's crime."

Relevant factors considered by the court included Lake's extensive juvenile record, his conviction of an earlier burglary, a presentence report, and, on the motion to modify, a report from the State Reception and Diagnostic Center which spoke of poor school and work performance, a failed diversion opportunity, failure to accept the seriousness of his criminal acts, and his need of a work training program. It appears that the court considered and acted upon significant relevant factors in accordance with K.S.A. 21-4606.

A sentence imposed by the trial court will generally not be disturbed as long as it is within the statutory limits and within the trial court's discretion, and the sentence is not the result of partiality, prejudice, oppression, or corrupt motive. *State v. Richard*, 235 Kan. 355, 366, 681 P.2d 612 (1984); *State v. Crispin*, 234 Kan. 104, 671 P.2d 502 (1983); *State v. Maxwell*, 10 Kan. App. 2d 62, 71, 691 P.2d 1316 (1984), *rev. denied* 236 Kan. 876 (1985). Lake's sentence was within the statutory limits and, given the enumerated factors considered by the court, was also within the trial court's discretion.

Lake complains the factors considered were not enunciated and he is right that it is the better practice for a sentencing judge to make a detailed statement of factors considered. *State v. Harrold*, 239 Kan. 645, Syl. ¶ 3, 722 P.2d 563 (1986). Failure to so state, however, "does not necessarily, in and of itself, demonstrate an abuse of discretion; each case must be separately considered on its facts." *Harrold*, 239 Kan. at 650. Having so considered, we find no abuse of discretion.

## Judicial Misconduct Issue

Turning to the second claim of error, Lake contends he was denied a fair sentencing hearing because of judicial misconduct. The judicial misconduct claim is most impartially and accurately presented by reproducing the transcript as it relates to colloquy between court and counsel during the sentencing hearing after the judge spoke of considering "scuttlebutt about this crime around the courthouse."

"MR. NEY: Well, I would only ask one question, Your Honor.
"THE COURT: You may.
"MR. NEY: The Court used the word scuttlebutt about this defendant.
"THE COURT: I said scuttlebutt about the crime.

"MR. NEY: I think scuttlebutt about the defendant.

"THE COURT: If I did say that, I'll say right now I didn't — but my memory is that I said about the crime. But either way, I didn't intend it about him. Because I don't know this man. I didn't know who was charged when I heard the scuttlebutt.

"MR. NEY: I understand. What I would state to the Court; it was considering scuttlebutt it heard about this crime then?

"THE COURT: Right.

"MR. NEY: I would just ask the Court what that is?

"THE COURT: Oh, it's about the gun of Judge Hodge's. Which I don't have to put that in the record but I will. That the gun more than likely, with the smile that I saw on Judge Hodge's face, it was a gun that I think he had to pay for. If that was the truth. That's why I referred to it as scuttlebutt. And of course you heard about a number of people involved. And read about it in the newspaper about somebody talking up in the joint about it. And it was talk about they were going to the State. And then what I'm saying is I was no virgin as to this case, when I got Mr. Lake's case. But also the main point is that from the word go, which was an actual fact, was that it was janitorial people who were working in this courthouse, who had keys, who were responsible for the thefts. That's the main point. And that's the point that makes me not believe your client when he says that it was at home. And implies that he knew about this at both instances when Mark [Simmons] delivered it to him. When I look at the dates in the file, they're different dates. One date is August 15th. The other date is October the 11th. Now, which makes me wonder, and he knew where it come from, and I bet he did. As far as I'm concerned, if he wanted to receive some consideration at this point, that was the time that he wanted to tell me what he wanted to change, as far as I am as a sentencing Judge, especially considering his past record. Now that's what I mean.

"MR. NEY: Well, it would be my respectful statement to the Court that the Court is basing, this Court said it was even in part, its consideration here on so called scuttlebutt, or things read in the newspaper. I think that is improper.

"THE COURT: You've got a right to your thoughts. And surely you're not maintaining that I'm going to base this sentencing just on what I have labeled scuttlebutt? Don't grab onto a common word usage and try to defend your client with it, Mr. Ney. Now, if you want to put in the record that you're maintaining that this Court is just considering the sentencing on the basis of scuttlebutt, you may do so.

"MR. NEY: Well I understand the Court's statement was, at least in part, that was one of the factors.

"THE COURT: No. I didn't say that. If a Court hears anything that involves anything concerning the defendant that he's got to sentence, he's to consider it; the truthful part of it. You don't deny that this man worked in this building. Do you?

"MR. NEY: No.

"THE COURT: All right. I said that was the most important thing. He wants to tell me that he wants to change. And that you point out that he's been so good

since these charges. I get letters every day from people in there that I've sentenced and they're Born-again Christians and they're reading the Bible. And I can check with the jail staff and you don't see that many Bibles. Now, am I suppose to disregard my right to use common knowledge of man and experience that I know? You will not succeed in depriving me of that, sir.

"MR. NEY: My problem with that, Your Honor, is obviously, I can't come in this court and anticipate what you have heard outside.

"THE COURT: You don't need to anticipate it. Just like you cannot anticipate my 62 years of living, sir.

"MR. NEY: Well, I don't understand why the Court is raising his voice towards me, when it is—

"THE COURT: There are a lot of things that I found in dealing with you, Mr. Ney, that you don't understand about this Court.

"MR. NEY: I think that the Court should recuse himself if it cannot fairly sentence.

"THE COURT: You may suggest anything that you want, Mr. Ney. I'm not surprised about that motion. Now, you give me a good reason why I should recuse myself. And what you do is, you take that up to the Upper Court because I'm going to complete with this. I'm going to complete this sentencing. And I don't want to hear anything else out of you.

"MR. NEY: I'm sorry, Your Honor. You had my reason.

"THE COURT: I'm saying that you're through because you're not handling what I asked appropriately. If you want to attack this Court, you attack me on the appeals level sir. I'm not going to sit here and be abused by your tongue.

"MR. NEY: Well, I would state for the record, the Court is the one raising its voice at me, and not I at the Court.

"THE COURT: I have a natural heavy voice and I respond. There's nothing new happening here that you don't know about. But I'll tell you, my words will be sustained by the Upper Court if you wish to take it. That will be your prerogative that I recognize. Just please recognize the Court's prerogatives.

"MR. NEY: Your Honor, I'm always respectful of the Court.

"THE COURT: That the Court doubts.

"MR. NEY: If the Court doubts that, I don't think that I have any business being here. Or my client shouldn't suffer because of that.

"THE COURT: Mr. Ney, the Court could have the opinion that you have no business even practicing before any Court, —

"MR. NEY: Is that the Court's opinion?

"THE COURT: — but that has nothing to do with my deciding about what should come or happen to this defendant.

"MR. NEY: Is the Court's opinion that I am not competent to practice law?

"THE COURT: Mr. Ney, you prepare your record the way you want to prepare it for the Court of Appeals; if you know how. And we'll leave it at that. Now, I'll go on with the decision that I had made prior to this very distasteful discourse that you have caused."

The State concludes these remarks do not represent "prejudice against defendant or his counsel" and do not show a viola-

tion of the Code of Judicial Conduct, Rule 601, Canon 3, 235 Kan. clxiii; and, even if it was violated, that alone does not entitle Lake to relief according to *State v. Starbuck*, 239 Kan. 132, 715 P.2d 1291 (1986). The State does concede there was one "unfortunate lapse," but claims that any "unfortunate or ill-considered remarks by the court were brought about by defense counsel." It concedes that "[a] hint of irritation did perhaps waft from the court's replies," a choice of words that might seem to be more "soft words" that sometimes "turneth away wrath" than words designed to give an impartial appraisal of the judge's remarks.

Turning to Lake's position as to these remarks, he claims it was error for the sentencing court to give any thought to newspaper articles or courthouse talk about the crimes. He claims that "unnecessary disparagement of defense counsel" shows a failure "to impartially and diligently perform the duties" of the sentencing court. In Lake's view, he has not been accorded due process because of violation of Canon 3, which provides that a judge: (1) should "neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding" (Canon 3 A (4), 235 Kan. clxiv); and (2) should "be patient, dignified, and courteous to litigants, . . . lawyers, and others with whom he deals in his official capacity" (Canon 3 A (3), 235 Kan. clxiii).

Lake bases his appeal solely upon the language of the Canons and three cases, which we turn to now.

*In re Sortor*, 220 Kan. 177, 178, 551 P.2d 1255 (1976), was a censure proceeding against a magistrate judge whose in-court remarks were held to "not demonstrate any malevolent purpose or motive" but to display "temperamental actions, comments and outbursts" reflecting adversely upon the judiciary as a whole. The court stated, "It cannot be tolerated." While the case holds a judge may be censured for such conduct, it does not support a claim that a judgment of sentence should be reversed for such conduct if the sentence is otherwise proper.

Lake, like the State, relies on *State v. Starbuck*, where the act of revoking probation was attacked because of alleged judicial misconduct by the same judge whose conduct is at issue here. The Supreme Court observed:

"Proceedings in court should be so conducted as to reflect the importance and

seriousness of the inquiry to ascertain the truth. Throughout the hearing, Judge Watson made comments regarding the evidence submitted by the accused probation violator. During the hearing, the judge repeatedly took over the examination of the witnesses. Occasionally, the judge expressed to the attorney for the defendant his opinions and that his 'patience was wearing thin.'

"Canon 3 of the rules relating to judicial conduct requires that a judge be patient, dignified, and courteous. 235 Kan. clxiii. A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law. He should exercise restraint over his conduct and utterances. If it becomes necessary during a proceeding for the judge to comment upon the conduct of witnesses, counsel, or the testimony, he should do so in a firm, dignified, and restrained manner, avoiding repartee and refraining from unnecessary disparagement of persons or issues." 239 Kan. at 134.

Even so, the State points out that the conduct complained of was not sufficient to cause the action to be reversed. In *Starbuck*, our Supreme Court stated:

"Allegations of judicial misconduct during a probation revocation hearing must be decided on the particular facts and circumstances surrounding such alleged instances of misconduct. In order to warrant or require the granting of a new hearing it must affirmatively appear that the conduct was of such a nature that it prejudiced the substantial rights of the complaining party." 239 Kan. at 134.

Lake also cites *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 (1984), which centers upon whether there is an obligation of a judge to recuse himself when he has a son employed as an attorney in the district attorney's office, but who takes no part in the trial. Failure to recuse, however, is not one of the two bases upon which Lake claims error and he did not file an affidavit to show grounds for recusal as required by K.S.A. 1986 Supp. 20-311d(a). Thus, we do not feel required to consider recusal. Nevertheless, we do so briefly for two reasons: First, it would be easy to understand a trial judge finally recusing himself under the circumstances in this case, voluntarily and without any motion, formal or otherwise, being made. Second, our Supreme Court has addressed recusal in two somewhat similar cases when we believe it was not required to do so.

The first of those cases was *Logan*, in which the affidavit was filed but held to be invalid for failure to "state the facts and reasons to support an allegation of bias." 236 Kan. at 85. The case provided a two-step rule: Was there a duty to recuse? "If he did have a duty to recuse and failed to do so, was there a showing of

actual bias or prejudice *to warrant setting aside the judgment of the trial court"? Logan,* 236 Kan. 79, Syl. ¶ 5; emphasis added.

The second of those cases was *State v. Griffen,* 241 Kan. 68, 734 P.2d 1089 (1987), where a trial judge referred to the male defendant as a "mean mother." As in the present case, defendant filed no affidavit, but orally moved for recusal. The court held the effect of the remark was to be determined not by the litigant but by " 'the mind of a reasonable person *with knowledge of all the circumstances.' "* 241 Kan. at 72. The court concluded, "we cannot say that the unfortunate remarks demonstrate such partiality, prejudice, or bias that the sentence should be set aside and the defendant resentenced by another judge." 241 Kan. at 72.

When Lake's attorney suggested recusal, the trial judge asked for reasons and received no compelling reasons. At that early stage, in fact, it appears there were none. As the judge explained, the "scuttlebutt" he had heard related not to the defendant but to the crime and Lake had already pleaded guilty to the crime. As to anything the judge had heard or read in the newspapers about the crime, he indicated he limited his consideration to "the truthful part of it." We interpret that to mean the facts inherent in the plea or otherwise properly supplied in the court proceedings. As to the inappropriate comments about Lake's attorney, the judge stated "but that has nothing to do with my deciding about what should come or happen to this defendant." We find no basis to question the truth of that assertion. We conclude that, as to Lake, there was no showing of bias or prejudice.

In so discussing *Logan* and *Griffen,* we have kept in mind that *Logan* found recusal requests invalid for failure of statutory compliance, but justiciable if alleging misconduct in failing to comply with our Code of Judicial Conduct and its purpose "to maintain public confidence in the integrity of the judicial process." *Logan,* 236 Kan. at 88. Our holding, however, is based solely upon our conclusion, developed further hereafter, that, as to Lake, bias or prejudice is not shown. See *Logan,* 236 Kan. at 86, 88.

Returning, then, to the guidance furnished by *Starbuck* as to whether general misconduct requires or favors reversal, we first observe that reversal would more likely lie here than in *Star-*

*buck.* The reason is simply that, if violation of probation terms is proven, termination of probation may be proper, a simple decision. Thus, the judge in *Starbuck* was operating in an area of restricted latitude of judicial discretion. The same is not true of the broad scope of judicial discretion available when the trial judge faced proper sentencing for Lake. Even so, we assume appellate review is governed by an identical controlling precept: "In order *to warrant or require* the granting of a new hearing it must affirmatively appear that the [judicial] conduct was of such a nature that it prejudiced the substantial rights of the complaining party." *State v. Starbuck*, 239 Kan. at 134; emphasis added.

It would seem this is the view taken by most appellate courts. As stated in 66 C.J.S., New Trial § 24: "Irregularities in the trial of a cause are ground for a new trial only where they have occasioned injury to the complaining party." This, in effect, is repeated in 66 C.J.S., New Trial § 25: "Misconduct on the part of the presiding judge has been classified as an irregularity in the proceedings of the court, but is not ground for a new trial . . . where it did not prejudice the moving party." We find no departure from this rule, save for a few jurisdictions which have uncommon statutes.

Lake's sentence was based upon the factors set out earlier herein, with some apparent weight being given to the judge's belief that Lake misrepresented where he obtained what he unlawfully possessed, a view we believe to be reasonable. Another influence was the judge's belief that Lake did not regard his transgressions as wrongful, a conclusion apparently shared by the Kansas Reception and Diagnostic Center. Thus, while the judge rejected the State's sentencing recommendations, he still chose the lowest minimum and the lowest maximum for each of the two crimes. We do not believe that imposing consecutive sentences shows prejudice to "the substantial rights of the complaining party." So, when the judge gratuitously forecast that "my words will be sustained by the Upper Court," he was right—but only if "words" is considered to mean not the words he spoke but the sentences he imposed.

Affirmed.