(99 P.3d 1117)
No. 91,514

In the Matter of the Equalization Appeal of Andover Antique Mall L.L.C. for The Tax Year 1999 in Butler County, Kansas.

Opinion filed October 29, 2004.

*Norman G. Manley*, of Davis & Manley, of El Dorado, for appellant.

*Tim Connell*, of Connell & Connell, of El Dorado, for appellee.

Before RULON, C.J., MCANANY, J., and BRAZIL, S.J.

MCANANY, J.: Butler County (County) appeals the district court's decision (1) overturning the determinations of the appraised value of the taxpayer's property by the Board of Tax Ap-

peals (BOTA) for the tax years 1999 and 2001, and (2) adopting the proposed findings of the taxpayer, Andover Antique Mall, L.L.C. (Andover). The County also appeals the district court judge's refusal to recuse himself. We reverse and reinstate BOTA's decisions.

In 1996 Andover purchased a 98,550 square foot lot for $90,000 and erected upon it, at a cost of $560,590, a 28,616 square foot prefabricated metal warehouse structure. The building consisted of a 3,400 square foot office area, a 22,700 square foot display area for antique dealers, and a 2,800 square foot storage area.

*Appraisal for Tax Year 1999*

The County appraised the property for tax year 1999 at $560,590. Andover appealed to BOTA. At the hearing on the appeal in July 2001, Clark Allemang, the county appraiser, testified that the depreciated replacement cost for the building was $620,450 for the 1999 tax year and that the total cost of land and building was approximately $700,000. Allemang stated that the County's $560,590 appraisal was based on the erroneous belief that the building was only 70% complete. (The building was 70% completed in 1997 and taxed accordingly for that year. It was completed in 1998, but the County failed to correct the 70% factor for tax years 1998 or 1999.) The County's 1999 valuation using the income approach was $680,750.

In appraising the property the County considered all three traditional approaches to value. However, since there were no comparable sales within Butler County and Allemang was not allowed to use comparable sales from outside the county, he turned to an appraisal prepared by Roger Turner in 1996 when the project originally was being financed. The Turner appraisal included a comparable sales analysis. Turner's appraisal was admitted over Andover's objections. Turner's appraisal in 1996 valued the property at $670,000 using the comparable sales approach, $645,000 using the income approach, and $675,000 using the cost approach. Turner's opinion of the fair market value of the property was $670,000. Allemang testified that Turner's appraisal was used to test the reasonableness of the County's appraisal and it confirmed

the appropriateness of the County's valuation since Turner's final conclusion as to fair market value and the values he derived using the three valuation methods were all greater than the County's appraisal of the property.

Tom Holman, one of Andover's owners but not an appraisal expert, opined that the cost approach, and not the income approach or comparable sales approach, was the fair measure of the property's value. He testified that the building was constructed for its specific and current use as an antique mall. He testified to water problems in the building and the overall condition of the building which he believed to be lower than characterized by the County. He believed that the building should have been classified as a warehouse rather than a multi-use sales building. In his opinion the proper value of the property using the cost approach was $344,000.

These valuations for 1999 can be more easily summarized as follows:

|  | County | Turner | Holman |
| --- | --- | --- | --- |
| Comparable Sales |  | $670,000 |  |
| Capitalized Net Income | $680,750 | $645,000 |  |
| Cost less Depreciation | $700,000 | $675,000 | $344,000 |
| Fair Market Value | $560,590 | $670,000 | $344,000 |

BOTA found that the County's appraisal was the best estimate of the fair market value of the property and that the County had met the burden of showing the correctness of its appraisal by a preponderance of the evidence. "The Board concludes that the County's recommended value, as supported by its cost approach, better reflects the fair market value of the subject property than the value recommended by the Taxpayer." BOTA set the appraised value of the property at $560,590.

*Appraisal for Tax Year 2001*

For 2001 the County appraised the property at $671,050. Andover appealed to BOTA. At the hearing before BOTA in August 2002, Brian Shephard, an independent fee appraiser and real estate broker hired by the County, testified that he had inspected the property and the surrounding area and reviewed Turner's 1996

appraisal. Andover again objected to the admission of Turner's opinions, and that objection was again overruled. Shephard concluded that Turner's valuation of $675,000 using the cost approach was still accurate in 2001. Shephard believed that the income approach was the most valid indicator of value. He concluded that the fair market value of the property was $645,000.

County Appraiser Allemang again testified that since there were still no comparable sales, the County focused on the cost and income approaches. Using the cost approach, the County valued the land at $97,500 and the building and improvements at $573,550, for a total valuation of $671,050. Using the income approach, the County valued the property at $922,500. Allemang noted that the information provided by Holman indicated a value of $752,000 based on capitalized net income. Since the income method resulted in such a high value using Holman's figures, the County decided to use the cost approach to value the land. Allemang also testified that based upon discussions with Andover's former counsel, the County recommended that the appraised value of the property drop to $616,020 to account for a classification of the building as something more than a warehouse but less than a sales room.

F. Lee Jones, a commercial and industrial real estate appraiser, testified for Andover. While he did use the cost approach in his analysis, Jones did not attach much credibility to it because the building was too big for the Andover market, and the building would have to be substantially depreciated because it is not suited to its location. His value using the cost approach was $734,000. He did not do an income analysis.

Jones believed that the comparable sales approach was the most reliable in the present case. Using this approach Jones valued the property at $433,000. Many of the buildings used for his sales comparisons were very old, much smaller, or did not share many of the characteristics of the Andover property. Jones opined that the highest and best use of the subject property was as a "[r]ing facility where they sell boats, repair boats, store boats, things like that, similar uses." Accordingly, Jones believed the building had a substantial amount of functional depreciation.

These valuations for 2001 can be more easily summarized as follows:

| | County | Shepard | Turner | Jones |
|---|---|---|---|---|
| Comparable Sales | | | $670,000 | $433,000 |
| Capitalized Net Income | $922,500 | | $645,000 | |
| Cost less Depreciation | $671,050 | | $675,000 | $734,000 |
| Fair Market Value | $616,020* | $645,000 | | $433,000 |

\* Recommended by the County at the hearing after its initial appraisal of $671,050.

After conducting the hearing on the 2001 appeal, BOTA found that substantial competent evidence existed to support the County's appraisal. The Board noted many deficiencies in the valuation process employed by Jones and found his estimate of value to be unsupported. "Summarily, given the uniqueness of the subject property, the County's revised cost approach to value, indicating a value of $616,020, is the best indicator of value in the record." BOTA valued the property at $616,020 for the 2001 tax year.

### Appeal to the District Court

Andover sought judicial review of BOTA's decisions for both tax years. The cases for the 2 years were consolidated. The County then filed a motion for change of judge. At the hearing on the County's motion, Allemang testified that the district court judge presiding over the case had told him that he did not believe the taxation statutes are fair and equitable and does not believe in them. Cindy Magill, the chief appraiser for the County, testified that she was involved in hearing an appeal by the judge concerning his personal real estate. Magill testified that during this hearing, the judge made a comment to her that he did not believe in the tax system in the State of Kansas. Two other members of the County's appraisal office also testified that they had heard the judge make similar comments regarding the tax system. The district court overruled the County's motion. The County took no further action on its motion until raising the issue in this appeal.

After reviewing the record and the briefs submitted by the parties, the district court found that the Turner appraisal was too dis-

tant in time to be credible and was improperly admitted in both tax appeals. The court found that the values set by the County as fair market value fluctuated widely from $500,000 to $700,000 and that the values set out by the County did not correspond to Allemang's statements that Andover area property valuations increased from 4½ to 6% annually. The court found that the Jones appraisal was by far the most credible evidence of fair market value as defined in K.S.A. 79-503a. After finding that BOTA erroneously admitted Turner's appraisal and that BOTA did not have other substantial evidence, the court concluded that BOTA's decision was arbitrary, unreasonable, and capricious and that the values of Andover's property for the years in question were $344,000 for 1999 and $433,000 for 2001. The County appeals.

### The Refusal to Recuse

The County claims the district judge erred in not recusing himself. The standard to be applied to a charge that the judge lacks impartiality is

" 'whether the charge of lack of impartiality is grounded on facts that would create reasonable doubt concerning the judge's impartiality, *not* in the mind of the judge himself, or even, necessarily, in the mind of the litigant filing the motion, but rather in the mind of a reasonable person *with knowledge of all the circumstances.*' " *State v. Griffen,* 241 Kan. 68, 72, 734 P.2d 1089 (1987) (quoting *State v. Logan,* 236 Kan. 79, Syl. ¶ 5, 689 P.2d 778 [1984]).

See also *Grove v. Orkin Exterminating Co.*, 18 Kan. App. 2d 369, 378, 855 P.2d 968 (1993) (applying the rule to a civil case).

K.S.A. 2003 Supp 20-311d(a) states that if a trial judge refuses to recuse after hearing the motion for change of judge, the party seeking a change may file an affidavit as provided for in subsection (b). K.S.A. 2003 Supp. 20-311d(b) states:

"If a party or a party's attorney files an affidavit alleging any of the grounds specified in subsection (c), the chief judge shall at once determine, or refer the affidavit to another district judge for prompt determination of, the legal sufficiency of the affidavit. If the affidavit is filed in a district court in which there is no other judge who is qualified to hear the matter, the chief judge shall at once notify the departmental justice for the district and request the appointment of another district judge to determine the legal sufficiency of the affidavit. If the affidavit is found to be legally sufficient, the case shall be assigned to another judge."

The County failed to file an affidavit after the trial judge refused to recuse. Generally, the failure to file an affidavit showing prejudice bars the party from arguing that the trial judge erred by failing to recuse himself. *State v. Alderson*, 260 Kan. 445, 453-54, 922 P.2d 435 (1996); *State v. Snedecor*, 9 Kan. App. 2d 454, 456, 680 P.2d 563, *rev. denied* 935 Kan. 1042 (1984).

The County could have filed the affidavit but chose not to do so. Though the statements of the trial judge certainly give rise to concern about the appropriateness of him undertaking these cases, and certainly press the envelope of the "Caesar's wife" ideal, in view of the ultimate disposition of this appeal we need not consider the issue further.

*The Trial Court's Review*

In *In re Tax Appeal of ANR Pipeline Co.*, 276 Kan. 702, 709-10, 79 P.3d 751 (2003), the court identified the standard to be used by the district court in reviewing a BOTA decision:

"In reviewing a BOTA decision, several well-established principles govern. BOTA is a specialized agency and is considered to be the paramount taxing authority in this state. [Citation omitted.] BOTA is a specialized agency that exists to decide taxation issues. [Citation omitted.] Its decisions are given great weight and deference when it is acting in its area of expertise. [Citation omitted.] The party challenging BOTA's decisions has the burden to prove that the action taken was erroneous. [Citation omitted.] However, if BOTA's interpretation of law is erroneous as a matter of law, appellate courts will take corrective steps. [Citation omitted.]

"Orders of BOTA are subject to judicial review under the Act for Judicial Review and Civil Enforcement of Agency Actions. [Citations omitted.] In reviewing BOTA decisions, this court determines whether relief is warranted under the provisions of K.S.A. 77-621(c), which provides:

'(1) The agency action, or the statute or rule and regulation on which the agency action is based, is unconstitutional on its face or as applied;

'(2) the agency has acted beyond the jurisdiction conferred by any provision of law;

'(3) the agency has not decided an issue requiring resolution;

'(4) the agency has erroneously interpreted or applied the law;

'(5) the agency has engaged in an unlawful procedure or has failed to follow prescribed procedure;

'(6) the persons taking the agency action were improperly constituted as a decision-making body or subject to disqualification;

'(7) the agency action is based on a determination of fact, made or implied by the agency, that is not supported by evidence that is substantial when viewed in light of the record as a whole, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this act; or

'(8) the agency action is otherwise unreasonable, arbitrary or capricious.'

" 'Arbitrary or capricious' may be established under K.S.A. 77-621(c)(8) where an administrative order is not supported by substantial evidence. [Citation omitted.] 'Substantial evidence is evidence which possesses both relevance and substance so as to form a basis of fact from which the issues can be reasonably resolved. [Citation omitted.]' [Citation omitted.]"

As stated in *Kaufman v. Kansas Dept. of SRS*, 248 Kan. 951, 959, 811 P.2d 876 (1991):

"The scope of appellate review of an agency's action is to determine if the district court reviewed the action in accordance with the Act for Judicial Review and Civil Enforcement of Agency Actions, K.S.A. 77-601 *et seq.* The party asserting invalidity of the action has the burden of proving the invalidity. [Citation omitted.]"

The trial court found that BOTA improperly admitted into evidence the Turner appraisal. The admission of evidence was a matter for BOTA's sound discretion. *Wendt v. University of Kansas Med. Center*, 274 Kan. 966, 975, 59 P.3d 325 (2002). Andover has the burden of showing that BOTA abused its discretion. See *First Savings Bank v. Frey*, 29 Kan. App. 2d 436, 440, 27 P.3d 934 (2001). Here, Andover objected to the admission of the Turner appraisal on hearsay grounds at the hearings for both 1999 and 2001. The County argued that the appraisal fell within the exceptions provided in K.S.A. 2003 Supp. 60-460(g), (h), or (i). These exceptions relate to (g) admissions by parties, (h) authorized and adoptive admissions, and (i) vicarious admissions. If the Kansas Rules of Evidence, K.S.A. 60-401 *et seq.*, control, then none of these hearsay exceptions applies. The Turner appraisal was commissioned by Commerce Bank in Wichita in June 1996 when it was considering a loan to Andover for this new project. The engagement letter was between Turner and the bank. The appraisal was sent to the bank. While Andover would be the ultimate beneficiary of the appraisal if it established a value of the property that warranted the bank making the loan, Turner was acting as the bank's agent, not Andover's agent, in making the appraisal. And

while the bank may have manifested its adoption of Turner's appraisal by making the loan to Andover, it can hardly be said that Andover adopted Turner's appraisal by taking the bank's money. Thus, under our evidence rules, the trial court's conclusion that BOTA erred in admitting the Turner appraisal would be sound. However, the Kansas Rules of Evidence do not apply. Tax appeal proceedings before BOTA are controlled by the Kansas Administrative Procedure Act, K.S.A. 77-501 *et seq.* See K.S.A. 74-2426(a). Pursuant to K.S.A. 77-524(a):

"A presiding officer need not be bound by technical rules of evidence, but shall give the parties reasonable opportunity to be heard and to present evidence, and the presiding officer shall act reasonably without partiality. The presiding officer shall give effect to the rules of privilege recognized by law. Evidence need not be excluded solely because it is hearsay."

BOTA was permitted to receive and consider the Turner appraisal. The trial court erred in concluding that the Turner appraisal was inadmissible.

The trial court found the Turner appraisal to be not only inadmissible, but also too distant in time to be credible. It is fundamental to our concept of judicial review in these matters that credibility issues are for BOTA, not for the reviewing district court or for this court on appeal. This concept is also of import in considering the trial court's finding that the Jones appraisal and analysis was "by far the most credible evidence of fair market value as defined by K.S.A. 79-503a." It is important to note that BOTA found the Jones valuation was unsupported. Nevertheless, with respect to both Turner and Jones, the district court substituted its judgment for that of BOTA rather than simply examining the record to determine if substantial evidence supported BOTA's actions. As stated in *Blue Cross & Blue Shield of Kansas, Inc. v. Praeger,* 276 Kan. 232, 75 P.3d 226 (2003):

"In applying the substantial evidence test under K.S.A. 77-621(c)(7), courts may not reweigh the facts, try the case *de novo*, or substitute their own judgment even if they would have found differently. During this process, the courts are not concerned with evidence contrary to the agency findings but must focus solely on evidence in support of the findings. [Citations omitted.] Consequently, the courts must accept as true the evidence and all inferences to be drawn therefrom which

support or tend to support the findings of the agency. They are to disregard any conflicting evidence or other inferences which might be drawn therefrom. [Citations omitted.]" 276 Kan. at 263.

The district court failed to apply this standard in reviewing BOTA's decisions by substituting its own conclusions on credibility issues for those of the board.

Finally, the district court concluded that "based on the appraisal of F. Lee Jones as well as other factors set out in K.S.A. 79-503a, the Court finds that the decision of the Board of Tax Appeals was arbitrary, unreasonable and capricious." The essence of this criticism of BOTA's decisions is that without the Turner appraisal, and given the high credibility of the Jones valuation (which only applied to 2001 and was not even offered for 1999), there was no substantial evidence to support BOTA's decisions for either 1999 or 2001 and they were, therefore, arbitrary, unreasonable, and capricious.

For tax year 1999, BOTA had before it the valuation testimony of County Appraiser Allemang, the properly admitted Turner appraisal, and the testimony of property owner Holman. Allemang analyzed the property using both the cost and income approaches. Using the standard described in *Praeger*, we find substantial evidence to support BOTA's and Allemang's ultimate determination of fair market value which was substantially below the values rendered under either the income or cost approach. BOTA found that evidence more compelling than that of Holman, who claimed the land plus the depreciated reconstruction cost of the building totaled only $344,000. In view of the fact that Andover agreed with the County's use of the cost approach, the fact that Andover paid $650,590 for the building and lot a few years earlier, the fact that Andover insured the improvements on the property for $633,000 — $289,000 more than the claimed combined value of the land and improvements, and other evidence in the record, including the Turner appraisal, we cannot conclude that BOTA was arbitrary, unreasonable, or capricious in finding substantial evidence to support a value of $560,590 for tax year 1999.

For 2001, BOTA, to whom we defer on issues of credibility, disregarded the Jones appraisal because it found it to be unsupported. Using the same method of analysis used for tax year 1999,

there was substantial evidence to support BOTA's determination that the appraised value of the property for tax year 2001 was $616,020.

It is important to note that other than the ruling on the admission of the Turner appraisal, the issues before BOTA were essentially issues of fact. Under the circumstances, our job is not to make a factual determination of the value of Andover's property for the relevant tax years. Neither is this the job of the district court. That task is for BOTA, to whose expertise in these matters we defer. Our job, and that of the district court, is simply to examine the record using the standards expressed in *Praeger* and *ANR Pipeline* to determine if substantial evidence supports BOTA's valuation.

Reversed and remanded for entry of judgment by the district court affirming BOTA's determination of the appraised value of Andover's property for the tax years 1999 and 2001.