NOT DESIGNATED FOR PUBLICATION

No. 127,849

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MARIA FERNANDA CASTILLO,
*Appellee*,

and

HILDEBERTO CASTILLO ALVARADO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; CONSTANCE M. ALVEY, judge. Oral argument held May 20, 2025. Opinion filed April 3, 2026. Affirmed.

*Aldo P. Caller*, of Overland Park, for appellant.

*Timothy Olson*, of LeBaron-Ramos Law Firm LLC, of Kansas City, for appellee.

Before HILL, P.J., ISHERWOOD and PICKERING, JJ.

ISHERWOOD, J.: Hildeberto Castillo Alvarado brings this appeal in the pursuit of relief from a series of errors the district court allegedly committed during the divorce proceedings between Hildeberto and his now ex-wife, Maria Fernanda Castillo. Hildeberto's attorney withdrew from the case prior to trial and despite multiple warnings from the district court, Hildeberto assured the judge that he wanted to represent himself going forward. The complexities that frequently plague that chosen path materialized, and Hildeberto now takes the position that the district court erred by not affording him the opportunity to secure substitute counsel. He also contends that the judge was biased

1

against him and formulated a division of property order that lacks any evidentiary support. We have carefully reviewed the record in tandem with Hildeberto's claims and did not detect any errors that compromised the integrity of the proceedings. Accordingly, the decisions of the district court are affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Maria and Hildeberto exchanged wedding vows in February 2008 and, roughly 14 years later, Maria decided they were no longer compatible and filed for divorce. She requested an equitable division of the couple's personal property, assets, and debts, and any other relief the district court deemed just and equitable.

Initially, both parties were represented by counsel. Because neither Maria nor Hildeberto spoke English, they were both assisted by interpreters throughout the proceedings.

In August 2023, the district court held a status conference where counsel for both parties appeared without the litigants. Trial was set for November 1, 2023, and the court ordered that Maria and Hildeberto were required to appear at the next status conference in September. Both the September status conference date and the November trial date were memorialized in a notice of hearing filed by Maria's counsel and served on Hildeberto's counsel via email.

One day before the September status conference, Hildeberto's counsel filed a motion to withdraw in conjunction with a consent and affidavit for withdrawal of attorney that was signed by Hildeberto. The motion to withdraw stated that Hildeberto wished to represent himself pro se. The next day, the district court entered an order granting the motion to withdraw.

Hildeberto appeared pro se at the September status conference and informed the district court that he intended to represent himself. The judge cautioned him about the challenges he was likely to face in proceeding pro se:

"THE COURT: Okay. And with respect to representing yourself, you understand that as a pro se litigant you are expected to know the law just as an attorney would?

"MR. ALVARADO: Okay.

"THE COURT: Okay. Which means that the Court will hold you to that same standard.

"MR. ALVARADO: Okay.

"THE COURT: And if we go forward today and there is anything that you realize later after I have made my decisions that you did not understand because you are not a lawyer, that is not a defense to the action. You are held to knowing what I'm doing along with the attorneys and what the law says. So you can't come back later and say, 'Well, I didn't have an attorney, so please set everything aside.' That is not a reason to set things aside. It's your choice. Do you understand that?

"MR. ALVARADO: Okay. Yep."

Despite Hildeberto's assurance that he understood the responsibilities of self-representation, he almost immediately demonstrated a lack of understanding of those expectations. When the district court asked whether he had prepared a domestic relations affidavit, Hildeberto claimed that "[n]obody told me I had to present documents," and that "[t]he attorney said I could come here by myself, but he never said take proof, papers, documents." The district court responded:

"But you told me when we started this conversation that you understood you would be treated the same as an attorney and know the law as an attorney,

3

and all I'm getting out of you is, 'I don't know,' and 'Nobody told me,' and 'Nobody did it for me.' That is not practicing law.

"How many attorneys come into court and say, 'Well, Your Honor, nobody told me I had to do that. Your Honor, nobody prepared that document for me. Your Honor, I don't know.' That is not what an attorney says. Otherwise, there would be a malpractice claim, and they would be sued for malpractice. So I can not sit here and explain to you the process of how to go forward and how to act like an attorney. That would take you seven years of school plus passing the bar exam, and you have done none of that; correct? But you want me to sit here and tell you how to do it; correct?"

The court asked whether Hildeberto was ready for trial or if he prepared documents to provide to opposing counsel. He responded that he did not have documents and inquired, "Words don't count? Words don't have any worth? . . . I have words. I don't have papers, but I have words, and I'm here present."

The court moved forward with the hearing and narrowed down the issues to be resolved in the case. According to a debts and assets table prepared by Maria's counsel, the couple had over $77,000 deposited across four bank accounts, one in Maria's name and three in Hildeberto's. Additionally, the district court considered a sum of $60,090 that Hildeberto transferred to his father in Mexico in April 2020. Hildeberto explained that he transferred the money because it was extra funds he had no use for in the United States.

The district court ordered that the marital home be sold and for all proceeds therefrom to be held in escrow until an equitable division could be determined. It also directed Hildeberto to write a check to Maria's attorney for the amount he transferred to his father and stated that it would be held in a trust account for later distribution. The judge warned Hildeberto that if he failed to comply with the court's order, he could be found in contempt of court. When asked whether he understood, Hildeberto offered an

4

affirmative response and asked when he had to write the check. The district court informed him that he had until that Friday to comply.

The parties reconvened in November for the bench trial and the district court again inquired whether Hildeberto was prepared to proceed pro se:

"THE COURT: Okay. All right.

"And, Mr. Alvarado, I want to make sure you understand you are representing yourself pro se; correct?

"MR. ALVARADO: Yes.

"THE COURT: Which means that you are expected to know the rules of evidence and the rules of civil procedure like an attorney does. Do you understand that?

"MR. ALVARADO: I don't know. I tried to get an attorney, and they just want to take my money. The last attorney—the last attorney just wanted the money, and he never came.

. . . .

"THE COURT: The original question was, you are expected to know the rules of evidence and the rules of procedure the same as an attorney does. Do you understand that?

"MR. ALVARADO: Yes, but I don't have an attorney.

"THE COURT: That's not what I'm asking. You are representing yourself pro se. We are going to start trial today, and you are expected to know the same as an attorney does. Do you understand that?

"MR. ALVARADO: Yes, I understand. I have my own evidence. I am my own attorney."

The district court then asked whether Hildeberto drafted a check, as the court ordered, to cover the money he transferred to his father in Mexico. Hildeberto asserted that he encountered problems with the bank in Mexico, so it was not possible to comply with the order. He attempted to share text messages that purportedly summarized the issues at the bank, but the district court deemed the messages hearsay and refused to consider them.

Shortly after this exchange, the district court provided Hildeberto a final warning about the dangers of proceeding pro se:

"THE COURT: I'm going to advise you, Mr. Alvarado, it will be very important for you to get an attorney because it's obvious to me you don't know how to try a case.

"MR. ALVARADO: Okay.

"THE COURT: All right. So you still want to go forward, even though I'm giving you the admonition that you do not seem prepared to try the case?

"MR. ALVARADO: What happens if I can not find a lawyer?

"THE COURT: You can find a lawyer. You just don't want to pay them.

"MR. ALVARADO: I have looked for attorneys, but they keep rejecting the case because they say that it's too complicated.

"THE COURT: Do you think maybe it's the way you communicate with them that's complicated?

"MR. ALVARADO: What is complicated is my evidence.

6

"THE COURT: All right."

The trial ensued, and Maria testified that the appraised value of the couple's home was $98,300. She also informed the court that Hildeberto made the transaction to his father without her authorization.

During Hildeberto's case-in-chief, he struggled to admit his Mexican marriage certificate and a copy of a petition for a protection from abuse order he filed against Maria in 2022, but that was ultimately denied. This occurrence prompted the judge to again inform Hildeberto that she could not instruct him how to practice law. On cross-examination, Hildeberto admitted that he transferred the money to his father without first consulting Maria.

At the conclusion of the proceeding the district court advised the parties that it arrived at its decision by virtue of the evidence and testimony offered at trial, as well as the statutory factors outlined in K.S.A. 23-2802. The judge announced that each party would retain their respective vehicle, as well as their own bank accounts, the marital home would go to Maria, and each party would be responsible for their own debts. The court also ordered Hildeberto to pay an equalization payment of $23,233.72 to Maria.

With the assistance of appellate counsel, Hildeberto now asks us to determine whether he was denied due process when the district court allowed him to represent himself, whether the district court judge was biased against him, and whether there is substantial competent evidence to support the conclusion reached by the district court regarding the division of property.

I. *The district court did not violate Hildeberto's right to procedural due process when it honored his request for self-representation.*

In his first claim of error Hildeberto alleges that the district court erred when it allowed him to represent himself at trial. He asserts that the court held an evidentiary hearing too quickly after Hildeberto's counsel withdrew and then failed to recognize that Hildeberto lacked the minimal sophistication necessary to ensure he received a fair trial. He contends that these reasons justify a finding that his right to procedural due process was compromised.

Because Hildeberto did not raise this issue before the district court, we must first determine whether we have jurisdiction to even consider his claims. Generally, issues not raised before the district court may not be raised for the first time on appeal. *In re N.E.*, 316 Kan. 391, 407, 516 P.3d 586 (2022). There are several exceptions, however, that allow review of an unpreserved claim: (1) The newly asserted theory involves only a question of law arising on proven or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the district court was right for the wrong reason. *In re Estate of Broderick*, 286 Kan. 1071, 1082, 191 P.3d 284 (2008).

Hildeberto argues, and we agree, that his allegations implicate the second exception concerning fundamental fairness and rights guaranteed to all litigants. For these reasons, we will exercise our prudential authority to consider Hildeberto's claim.

Having determined that jurisdiction is proper, we next outline the applicable law that governs when a procedural due process violation is alleged to have occurred. When the interest at stake in a litigation involves life, liberty, or property, procedural due process demands that the individual receive proper notice and an opportunity to be heard

at a meaningful time and in a meaningful manner. *State v. Gonzalez*, 57 Kan. App. 2d 618, 623, 457 P.3d 938 (2019); see Kan. Const. Bill of Rights, § 18.

"Due process is not a static concept; instead, its requirements vary to assure the basic fairness of each particular action according to its circumstances." *Kempke v. Kansas Dept. of Revenue*, 281 Kan. 770, 776, 133 P.3d 104 (2006). Notice must be reasonably calculated to inform all interested parties of the pendency of the action and afford them an opportunity to present objections. *Board of Reno County Comm'rs v. Akins*, 271 Kan. 192, 196, 21 P.3d 535 (2001).

Whether an individual's due process rights were violated is a question of law over which we exercise unlimited review. *Leek v. Brown*, 62 Kan. App. 2d 599, 604, 518 P.3d 1257 (2022). To successfully establish that a due process violation occurred, the party asserting the violation bears the burden to demonstrate they were denied a specific procedural protection that they were entitled to receive. *In re Marriage of Hutchison*, 47 Kan. App. 2d 851, 856, 281 P.3d 1126 (2012).

Kansas courts have consistently advised that in criminal matters, district courts must provide specific warnings to litigants about the dangers and disadvantages of self-representation to ensure the record reflects a clear understanding of the risk they agree to accept and that their decision to proceed is made with their eyes wide open. *State v. Kemmerly*, 319 Kan. 91, 97, 552 P.3d 1244 (2024). While the goal is to ensure the litigant's decision is a knowing and voluntary one, there is not necessarily a curated checklist of admonitions a district court is required to follow in accomplishing that task. 319 Kan. at 96 (citing *State v. Burden*, 311 Kan. 859, 864, 467 P.3d 495 [2020]).

Significantly fewer obligations are placed upon district courts in civil proceedings such as this one. The touchstone in that context is equal treatment. Pro se litigants must adhere to the same procedural and evidentiary rules as represented parties and cannot

enjoy an advantage or suffer a disadvantage simply because they opted to venture into unchartered waters without a captain. *Joritz v. University of Kansas*, 61 Kan. App. 2d 482, 498, 505 P.3d 775 (2022). Accordingly, those who choose this course "'cannot expect the trial judge or an attorney for the other party to advise him or her of the law or court rules, or to see that his or her case is properly presented.'" *Morton County Hospital v. Howell*, 51 Kan. App. 2d 1103, 1113, 361 P.3d 515 (2015) (quoting *Mangiaracina v. Gutierrez*, 11 Kan. App. 2d 594, 595-96, 730 P.2d 1109 [1986]). Thus, district courts have no duty to provide special advisements or warnings to civil litigants who opt for self-representation.

Revisiting the record, Hildeberto made his intention to proceed pro se known to the district court at the pretrial status conference. In response the district court engaged him in a lengthy discussion to ensure Hildeberto went into the proceeding with a clear understanding that representing himself meant that he would be held to the same standard as a licensed attorney. Specifically, the judge informed Hildeberto that "as a pro se litigant [he was] expected to know the law just as an attorney would." Moreover, he would be treated as though he understood, from a procedural perspective, the actions taken by opposing counsel or the court and would not have the ability to later request a nullification of the outcome of the case on the grounds that as a nonattorney, he lacked any understanding of how to present his case within the confines of the law. Later in the proceeding, the judge reiterated to Hildeberto, "[y]ou are acting as an attorney today" and that the court could not explain "legal concepts" to him because he was expected "to be prepared and do things as an attorney would do." Thus, Hildeberto did not have "the benefit of being ignorant to the law." Hildeberto assured the judge that he clearly grasped the expectations for his chosen course of action and still wished to continue down that path.

The trial commenced a little over one month later. After the parties were sworn in but before any evidence was introduced or testimony offered, the district court informed

Hildeberto that "it will be very important for [him] to get an attorney because it's obvious to me you don't know how to try a case." Hildeberto opted to soldier on pro se, and instances arose throughout the trial that prompted the district court to again advise him of the risks and consequences of self-representation.

The district court's role in civil cases is limited to ensuring the parties enjoy procedural fairness and that there is no disparity in the application of the rules. See *Guillory v. State*, 285 Kan. 223, 228-29, 170 P.3d 403 (2007). From the record before us we are not only satisfied that Hildeberto received the notice he was entitled to, but also that he knowingly entered into the decision to represent himself with an awareness of the realities of self-representation. Accordingly, we are not persuaded that the district court violated Hildeberto's procedural due process rights when it honored his decision to proceed pro se.

II. *The district court judge did not exhibit bias toward Hildeberto or otherwise engage in prejudicial conduct toward him that necessitated her recusal from the case.*

Hildeberto's second contention of error consists of a claim that rulings the district court entered against him were the product of bias. He specifically alleges that the judge's refusal to allow him any meaningful opportunity to secure new counsel was an effort to "brow-beat" Hildeberto into representing himself and demonstrates a degree of prejudice toward him that warranted the judge's recusal.

The Kansas Code of Judicial Conduct, Supreme Court Rule 601B, Canon 2, Rule 2.11(A)(1) states: "A judge shall disqualify himself or herself in any proceeding in which the judge's *impartiality* might reasonably be questioned," including those instances where the judge has a personal bias or prejudice against a party. 2026 Kan. S. Ct. R. at 495. The recusal standard is an objective one and considers whether a reasonable person with

11

knowledge of all the circumstances might have reasonable doubt concerning the judge's impartiality. *State v. Logan*, 236 Kan. 79, 86, 689 P.2d 778 (1984).

K.S.A. 20-311d delineates the procedure that a party should follow when seeking to disqualify a judge. It contemplates a motion formally requesting a change of judge and, if necessary, an accompanying affidavit that provides a detailed rationale to support the requested disqualification. *State v. Walker*, 283 Kan. 587, 605-06, 153 P.3d 1257 (2007).

Kansas courts employ a two-part test to determine whether a due process violation occurred as the result of a judge's failure to recuse. The first part of the inquiry asks whether the judge had a duty to recuse from the case because of bias, prejudice, or partiality. *Logan*, 236 Kan. at 86. We must then analyze whether the complaining party demonstrated actual bias or prejudice by the judge that necessitates reversal. 236 Kan. at 86. Reviewing courts have often rejected claims of error when motions for a change of judge were denied because they failed to demonstrate any prejudice. See, e.g., *Walker*, 283 Kan. at 609; *State v. Reed*, 282 Kan. 272, 279, 144 P.3d 677 (2006); *State v. Griffen*, 241 Kan. 68, 73, 734 P.2d 1089 (1987).

Hildeberto did not voice an objection to the judge, nor did he file a motion or, if necessary, a subsequent affidavit under K.S.A. 20-311d(a), or (b) to formally request an alternate for or replacement of the judge. "Generally, the failure to file an affidavit showing prejudice bars the party from arguing that the trial judge erred by failing to recuse himself." *In re Equalization Appeal of Andover Antique Mall*, 33 Kan. App. 2d 199, 205, 99 P.3d 1117 (2004) (citing *State v. Alderson*, 260 Kan. 445, 453-54, 922 P.2d 435 [1996]; *State v. Snedecor*, 9 Kan. App. 2d 454, 456, 680 P.2d 563 [1984]).

Hildeberto acknowledges that he failed to follow the dictates of K.S.A. 20-311d to obtain the relief he now claims was warranted but again attributes it to his lack of knowledge and understanding of the legal field. Nevertheless, an avenue remains that

enables us to reach the merits of his claim. When remarks made by the district court provide the foundation for a party's claim of bias, the issue is properly preserved for appeal because the judge has an independent obligation to recuse if their impartiality might reasonably be questioned. *In re Marriage of C.A. and M.A.*, No. 126,195, 2023 WL 8521195, at *2 (Kan. App. 2023) (unpublished opinion).

We find the issue is preserved under these circumstances since Hildeberto highlighted remarks made during the parties' bench trial as evidence of bias. Nevertheless, we find he is not entitled to relief on the merits of his claim. See *Alderson*, 260 Kan. at 453-54. We do not view the remarks in the same light as Hildeberto does, particularly when they are considered in conjunction with the remainder of the record. Nor has Hildeberto successfully demonstrated actual bias or prejudice sufficient to warrant setting aside the district court's judgment in the proceeding. See *Logan*, 236 Kan. at 86.

When considering the merits of Hildeberto's claims of bias, we view them with an eye toward the particular facts and circumstances surrounding his allegations and exercise a de novo standard of review. *State v. Moyer*, 306 Kan. 342, 369-70, 410 P.3d 71 (2017); *In re Marriage of Bush*, 62 Kan. App. 2d 284, 291, 513 P.3d 494 (2022). As the party alleging judicial misconduct, Hildeberto bears the burden to establish that the misconduct occurred and that he suffered prejudice as a result. *State v. Miller*, 308 Kan. 1119, 1154, 427 P.3d 907 (2018).

In his first attempt to evidence the existence of bias, Hildeberto directs our attention to the order issued by the district court following the September status conference. He specifically takes issue with the fact that his attorney was permitted to withdraw the day before that hearing was conducted. Hildeberto's complaints regarding his attorney's withdrawal are framed as a request for leniency due to his pro se status. But as we clearly set out in the first issue, Kansas law affords no such leniency to pro se

litigants. See *Guillory*, 285 Kan. at 229 (Pro se litigant cannot be given either advantage or disadvantage solely because of proceeding pro se.).

Hildeberto next cites the district court's orders for him to transfer $60,000 into escrow and to put the marital home on the market for sale for what he claims offer further evidence of bias. Adverse legal rulings alone, however, cannot form the basis for a recusal. K.S.A. 20-311d(d); *State ex rel. Miller v. Richardson*, 229 Kan. 234, 238, 623 P.2d 1317 (1981).

Finally, we consider Hildeberto's claim that three particular comments uttered by the district court were inappropriate and offer further evidence of bias, including: (1) asking whether Hildeberto read the statutory definition of marital property; (2) a sardonic comment that if Hildeberto had a problem with Kansas laws, he should take up his concerns with the Legislature; and (3) the district court's response to his comments about women, stating that the court wished men helped in the home. Hildeberto requests that we distinguish his case from the ruling a panel of this court issued for *In re Marriage of C.A. and M.A.* in which we determined that two isolated remarks during a bench trial did not establish bias that rose to the level of disqualifying the judge. 2023 WL 8521195, at *2-3. We do not share Hildeberto's opinion that the two cases necessitate different outcomes.

To succeed on a claim that admonishments from a judge establish a basis for disqualification, a party is required to demonstrate that the admonishments displayed "'deep-seated and unequivocal antagonism that would render fair judgment impossible.'" *Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1151 (10th Cir. 2006) (citing *Liteky v. United States*, 510 U.S. 540, 555-56, 114 S. Ct. 1147, 127 L. Ed. 2d 474 [1994]). By contrast, the comments and interactions that Hildeberto complains of are better characterized as inspired by the circumstances, frustrations toward Hildeberto's refusal to secure legal representation, and the district court's attempts to allow a pause in the

14

proceedings and a continuance so that he could hire a lawyer. Even if we found the comments reflected bias, Hildeberto's claim still falls short of success because he has not identified what prejudice befell him as a result of the district court's conduct such that reversal is required. See *Walker*, 283 Kan. at 609 (rejecting claims of error in denials of motions for change of judge due to a lack of demonstrated prejudice). We are not persuaded that this issue entitles Hildeberto to the relief he seeks.

III. *The district court's equal division of marital property is supported by a sufficient evidentiary foundation and reflects a proper exercise of the district court's discretion.*

When a party files for divorce, the property owned by either spouse—even if held separately—becomes part of the marital estate. See K.S.A. 23-2801(a). The district court must make "a just and reasonable division of [the marital] property," considering several statutory factors (such as the length of the marriage, type and acquisition of property, and dissipation of assets). K.S.A. 23-2802(c); see *In re Marriage of Rodriguez*, 266 Kan. 347, 352-53, 969 P.2d 880 (1998). Thus, district courts enjoy broad discretion in deciding the property rights of the parties in a divorce action. *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002). We will not disturb its assignment of property absent an abuse of discretion. A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *In re Spradling*, 315 Kan. 552, 590, 509 P.3d 483 (2022). The party asserting the district court abused its discretion bears the burden of showing such an abuse occurred. *Bicknell v. Kansas Dept. of Revenue*, 315 Kan. 451, 466, 509 P.3d 1211 (2022).

Supreme Court Rule 165 (2026 Kan. S. Ct. R. at 232) requires a district court to provide adequate findings of fact and conclusions of law on the record to explain the court's decision on contested matters. See K.S.A. 60-252. Generally, a party bears the responsibility to object when they believe those findings and conclusions are inadequate

15

so that the district court can rectify any alleged deficiencies. *In re Guardianship and Conservatorship of B.H.*, 309 Kan. 1097, 1107-08, 442 P.3d 457 (2019). When a party fails to do so, we presume all facts necessary to support the district court's judgment were articulated. *Bicknell*, 315 Kan. at 510. Where, however, the record does not support that presumption and the lack of specific findings precludes meaningful review, we may consider a remand. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361-63, 277 P.3d 1062 (2012).

The district court ordered that each party keep their respective vehicles; assigned the marital home to Maria; ordered that the bank accounts remain with the party to whom the account belonged; and ordered that each party be responsible for their own debts. The court also imputed the $60,000 that Hildeberto transferred to Mexico during the parties' marriage to his share of the marital estate and ordered him to pay Maria $23,233.72 as an equalization payment. In total, the property was essentially split equally, which the court reasoned was the fairest outcome.

There are multiple facets to Hildeberto's sufficiency claim and each will be addressed in turn. First, he contends that the record fails to indicate that the district court took any of the K.S.A. 23-2802 factors into consideration. Rather, it simply concluded that a 50/50 property division offered a fair resolution. Hildeberto asserts that such a division may technically be fair, but that conclusion cannot be drawn here where there was not sufficient evidence concerning each of the factors. Hildeberto argues that the district court's failure to conduct a comprehensive analysis had a far-reaching ripple effect in that it undermined his ability to prepare a detailed posttrial motion or articulate a compelling appellate argument.

Turning to the additional nuances of Hildeberto's claim under this issue, he contends the district court placed too much reliance on an affidavit Maria submitted, it lacked sufficient evidence to enable it to set an accurate market value for the marital

home, thereby yielding an unfair result on that issue, and impermissibly considered his transfer of $60,000 to Mexico when dividing the parties' assets.

After reviewing the record alongside the full extent of Hildeberto's claim, we are unable to join Hildeberto's conclusion that the district court abused its discretion when ordering its division of marital property in this case. As support for our conclusion, we note that at the outset of its ruling, the district court informed the parties that it had considered the statutory factors found in K.S.A. 23-2802 to aid in establishing the most equitable division of the parties' marital property. Then, taking those factors along with the evidence and testimony presented at trial, it arrived at a conclusion that it believed was just and reasonable. The district court later memorialized its findings in a journal entry as required by K.S.A. 60-252(a)(1). For these reasons, we do not detect any legal or factual flaws in the district court's division of the parties' marital property.

Similarly, when we viewed the district court's order through the lens of the third prong of the abuse of discretion analysis, whether or not the decision was reasonable, we were likewise unable to find this factor favored Hildeberto. The parties were married for 14 years with a 17-year age gap between them, there were obvious differences in their respective earning capacities, and there was some evidence of dissipation of assets given Hildeberto's transfer of $60,000 to his father in Mexico during the marriage. Therefore, we also hold that the district court's ordered property division was reasonable and not an abuse of discretion.

CONCLUSION

The record before us adequately bears out that the parties were treated equally throughout their divorce proceedings and that nothing in the district court's approach to Hildeberto's self-representation compromised his right to due process. There is likewise no evidence to support the conclusion that recusal of the district court judge was

17

warranted due to bias against Hildeberto or that she ordered a division of marital property that was unreasonable and lacked evidentiary support.

Affirmed.